**Steven D. HYCHE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0911–CR–1154.

Court of Appeals of Indiana.

Sept. 23, 2010.

Rehearing Denied Nov. 15, 2010.

Michael R. Fisher, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, James E. Porter, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

This is a case of a drug deal gone awry. The defendant and another man attempted to buy drugs, and during the transaction, one of the sellers was shot to death. The State charged the defendant with murder, felony murder, and dealing in a controlled substance. The jury found the defendant not guilty of murder, but guilty of felony murder and dealing.

On appeal, the defendant Steven Hyche claims that he was merely attempting to *purchase* ecstasy, not to deal in it. As such, he claims that he does not fall within the legislature's definition of a person who has committed dealing and therefore could not have been guilty of felony murder. We agree and vacate his convictions.

### Facts and Procedural History

On August 26, 2008, Hyche called Titus Smith–Kelsey looking for "pills." Tr. at 254. Smith–Kelsey put Hyche in touch with Chase Rollins, who had three ecstasy[1] pills that he would sell for $30.00. Hyche and Rollins arranged to meet at a northwest Indianapolis apartment complex to complete the sale. Rollins drove to the complex accompanied by Greg Johnson. En route, Rollins called Hyche's number a

couple times to verify the exact location. When Rollins and Johnson entered the complex, they saw two men standing close together on a corner. They called Hyche's phone to confirm that he was one of the two, and Rollins instructed them to get in the car when he pulled up. When Rollins stopped at the corner and attempted to unlock the car, a gunshot shattered the front passenger's side window. Then Rollins heard eight or nine more shots. Johnson suffered five gunshot wounds but managed to exit the vehicle. Thereafter, he collapsed on the lawn and died.

Rollins was shot in the back of the head, and he slumped over the steering wheel while the vehicle rolled and hit a tree. Rollins testified that he or Johnson had the three ecstasy pills when they pulled up to the corner; however, police found no pills at the scene. *Id.* at 161, 180, 299. Eyewitnesses indicated that, after the shooting, they saw a man walk rapidly and "very nervously" through the complex, enter the passenger's side of a vehicle, and speed away. *Id.* at 54, 56.

Several days later, Rollins identified Hyche through a photo array as one of the two men standing by his vehicle when he pulled up. Rollins testified that he never saw Hyche with a gun and that he did not know either of the assailants before the incident. *Id.* at 154, 180.

On October 8, 2008, the State charged Hyche with murder[2] and class B felony dealing in a schedule I controlled substance.[3] On November 18, 2008, the State filed an amended information, which added

---

1. Ecstasy (formally "methylenedioxymethamphetamine" or "MDMA") is classified as a schedule I controlled substance. Ind.Code § 35–48–2–4(d)(13).

2. According to Indiana Code Section 35–42–1–1(1), "[a] person who ... knowingly or intentionally kills another human being ... commits murder, a felony."

3. Ind.Code § 35–48–4–2, discussed *infra*.

one count of felony murder.[4] On October 9, 2009, a jury found Hyche not guilty of murder and guilty of both felony murder and dealing. On October 28, 2009, the trial court merged the dealing conviction into the felony murder conviction and sentenced him to sixty-five years, with ten years suspended. This appeal ensued. Additional facts will be provided as necessary.

### Discussion and Decision

■ Hyche contends that the evidence is insufficient to support his convictions for dealing in a controlled substance and felony murder. When reviewing a sufficiency claim, we neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the verdict. *Kenney v. State,* 908 N.E.2d 350, 351 (Ind. Ct.App.2009), *trans. denied.* We affirm the conviction unless no reasonable trier of fact could find the elements of the crime proven beyond a reasonable doubt. *Id.* at 351–52.

Here, Hyche was convicted of felony murder based in part on the jury's determination that he committed the underlying offense of dealing in a schedule I controlled substance. Indiana Code Section 35–42–1–1(3)(C) states, "A person who ... kills another human being while committing or attempting to commit ... dealing in a schedule I ... controlled substance ... commits murder, a felony."[5] To find him guilty under this statute, the jury had to find that he had committed the underlying offense of dealing in a schedule I controlled substance. Indiana Code Section 35–48–4–2, states in pertinent part,

(a) A person who:

(1) Knowingly or intentionally:

(A) manufactures;

(B) finances the manufacture of;

(C) *delivers;* or

(D) *finances the delivery of;*

A controlled substance, pure or adulterated, classified in schedule I ... or

(2) possesses, with intent to:

(A) manufacture;

(B) finance the manufacture of;

(C) deliver; or

(D) finance the delivery of;

a controlled substance, pure or adulterated, classified in schedule I ... commits dealing in a schedule I ... controlled substance, a Class B felony[.]

(Emphases added.)

■ Hyche asserts that he acted only as a purchaser and that, as such, the evidence is insufficient to support the jury's determination that he was dealing. Therefore, he could not, by definition, be guilty of felony murder. The State asks us to construe the terms "deliver" or "finance the delivery of" drugs to include Hyche's actions in attempting to purchase the ecstasy. "The primary rule in statutory construction is to ascertain and give effect to the intent of the legislature." *Murray v. State,* 798 N.E.2d 895, 902 (Ind.Ct.App. 2003).

> The best evidence of legislative intent is the language of the statute, giving all words their plain and ordinary meaning unless otherwise indicated by statute. We will presume that the legislature intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result.

---

4. Ind.Code § 35–42–1–1(3)(C), discussed *infra.*

5. The felony murder statute contains a specific list of underlying felonies upon which a conviction can be based. Ind.Code § 35–42–1–1(2) and (3). The list includes numerous drug dealing offenses, but does not include drug possession offenses.

We must also strictly construe penal statutes against the State to avoid enlarging them beyond the fair meaning of the language used.

*Id.* (citations and quotation marks omitted). We may consult English language dictionaries to ascertain the plain meaning of statutory terms. *Stratton v. State,* 791 N.E.2d 220, 224 (Ind.Ct.App.2003), *trans. denied.*

Indiana Code Section 35–48–1–11 defines "delivery" as "(1) an actual or constructive transfer from one (1) person *to another* of a controlled substance, whether or not there is an agency relationship; or (2) the organizing or supervising of an activity described in subdivision (1)." (Emphasis added.) Specifically, the State contends that because Hyche initiated the transaction by calling Smith–Kelsey, he *organized* the transfer of the drugs; as such, it argues that he engaged in a delivery under Indiana Code Section 35–48–4–2(a)(1)(C). We disagree.

■ Black's Law Dictionary defines "delivery" as "the giving or yielding possession or control of something *to another.*" BLACK'S LAW DICTIONARY 461 (8th ed. 2004) (emphasis added). Here, Hyche merely attempted to purchase ecstasy. He acted as the transferee, not the transferor. The fact that he called another person to request drugs no more makes him a dealer in ecstasy than it would make a customer who calls the florist a dealer in flowers. The State's cited cases are factually distinguishable because each involved a defendant involved on the distribution side of the transaction. *See Smalley v. State,* 732 N.E.2d 1231, 1236 (Ind.Ct.App. 2000) (holding evidence sufficient to support defendant's dealing conviction where defendant organized purchase and delivery of cocaine from dealer to third party); *see also Carter v. State,* 471 N.E.2d 1111, 1114 (Ind.1984) (holding evidence sufficient to support defendant's dealing conviction where defendant arranged and brought undercover officer/purchaser to purchase site and told undercover officers to let him know when they needed more drugs and he would obtain them). The record is devoid of any evidence that Hyche was acting on the distribution side. Thus, he cannot be said to have organized the delivery of ecstasy under the statute.

The State also asserts that Hyche *financed* the delivery of the drugs by agreeing to pay $30.00 for them. Financing is "the act or process of raising or providing funds." BLACK'S LAW DICTIONARY at 663. The term is commonly construed as applying to one who acts as a creditor or an investor and not one who merely acts as a purchaser. *See* THE AMERICAN HERITAGE DICTIONARY 504 (2nd college ed. 1991) (defining "financing" as "supply[ing] funds to" or "furnish[ing] credit to" and "finance" as pertaining to "management of money, banking, investment, or credit"). As support for its argument that Hyche acted as a financier, the State cites only one Texas case, in which the defendant admittedly acted as a broker between the undercover officer/seller and third-party purchasers. *Diaz v. State,* 902 S.W.2d 149 (Tex.Ct.App. 1995). In *Diaz,* the defendant challenged his conviction for illegal investment of funds to further the commission of the offense of possession of cocaine. *Id.* at 150. There, the Court noted that the terms "finance" and "invest" included the raising and furnishing of funds and held the evidence sufficient to sustain defendant's conviction even though the funds he supplied were not his personal funds. *Id.* at 151.

Here, Hyche was charged with *dealing* in ecstasy, not investing funds to further the offense of *possession* of it. He was not charged with possession with intent to deliver, and the record is devoid of evidence

of any other persons to whom he intended to deliver the drugs. Thus, *Diaz* is factually distinguishable. Moreover, there is no evidence that Hyche furnished any funds in furtherance of Rollins's or Smith–Kelsey's drug dealing activities. Instead, he acted merely as a purchaser and not as a creditor or an investor. As such, he could no more be deemed to be financing the delivery of ecstasy than a grocery shopper could be deemed to be financing the supermarket's inventory. Because the record is devoid of any evidence that Hyche was acting in any capacity other than that of purchaser, it is insufficient to support a dealing conviction and therefore a felony murder conviction based thereon.

■■■ Finally, the State argues that the evidence is sufficient to support Hyche's guilt as Rollins's accomplice in dealing ecstasy. *See* Ind.Code § 35–41–2–4 (stating that "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person: (1) has not been prosecuted for the offense; (2) has not been convicted of the offense; or (3) has been acquitted of the offense"). Accomplice liability is not a separate offense; rather, it is merely a separate basis of liability for the offense charged. *Suggs v. State*, 883 N.E.2d 1188, 1192 (Ind.Ct. App.2008).

In determining whether there was sufficient evidence for purposes of accomplice liability, we consider such factors as: (1) presence at the scene of the crime; (2) companionship with another at the scene of the crime; (3) failure to oppose commission of crime; and (4) course of conduct before, during, and after occurrence of crime. *Bruno v. State*, 774 N.E.2d 880, 882 (Ind. 2002).

Here, Hyche merely sought to purchase ecstasy from Rollins. Although both were present at the scene of the crime, they were not companions. Indeed, given the ensuing shootings, the two could more accurately be described as adversaries. The cases cited by the State involve defendants who were active in brokering the deals between the dealers and third parties and were acting on the distribution side of the transactions. Such is not the case here.[6]

In sum, we agree with Hyche that the State's interpretation of the dealing statute would "completely blur the distinction between one who possesses a drug and one who distributes it." Reply Br. at 4. Hyche acted only as a purchaser of ecstasy, not as a dealer. To find that his offer to purchase the drug somehow amounts to organizing, financing, or even inducing its delivery, defies logic and cannot reasonably reflect the intent of the General Assembly in enacting these statutes. As such, we hold that the evidence is insufficient to support his dealing conviction. Because his felony murder conviction was based on the commission of the underlying offense of dealing, it too cannot stand. Thus, we vacate both convictions.

Vacated.

FRIEDLANDER, J., and BARNES, J., concur.

---

**6.** *See Schnitz v. State*, 650 N.E.2d 717, 722 (Ind.Ct.App.1995) (holding evidence sufficient to support defendant's conviction for aiding in dealing cocaine where defendant arranged for buyer and seller to meet and consummate sale at his apartment); *see also Wallace v. State*, 498 N.E.2d 961, 964 (Ind.1986) (holding evidence sufficient to support defendant's conviction for aiding in dealing LSD where defendant suggested undercover officers/purchasers call him, accompanied them to transaction, and took "commission" in LSD pills).