**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 28 2012, 8:34 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**GREGORY L. FUMAROLO**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES HENRY TANKARD, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A04-1110-CR-570 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

### APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Wendy W. Davis, Judge
Cause No. 02D06-1103-FB-50

**June 28, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

When James Henry Tankard saw a signal from a potential drug buyer, he approached buyer's car and asked him what he was looking for. The buyer said that he wanted to buy crack cocaine, so Tankard got into the car and directed him to a drug house. Tankard went inside with the buyer's money, returned momentarily, and gave the buyer some crack cocaine. The buyer turned out to be an undercover police detective. Shortly thereafter, police conducted a traffic stop of the vehicle, and Tankard was arrested and charged with class B felony dealing in cocaine.

A jury convicted Tankard as charged, and he now appeals, claiming that the trial court erred in instructing the jury on the definition of "delivery," that the evidence is insufficient to support his conviction, and that his seventeen-year sentence is inappropriate. Finding no error, we affirm.

**Facts and Procedural History**

In 2011, in response to community complaints and high rates of drug dealing and violent activity, the Fort Wayne Police Department sent undercover vice and narcotics officers to the neighborhood surrounding Pontiac and Clinton Streets, including Detective Jeffrey Ripley. When working undercover, Detective Ripley adopted a persona that enabled him to blend in with those living and working in the neighborhood. He drove an old, unmarked vehicle, wore dirty clothes, and avoided showering.

On March 1, 2011, Detective Ripley drove through the neighborhood and saw Tankard standing between two houses on Leith Street. He was familiar with the houses from

2

prior drug investigations but had never met Tankard. Tankard walked to a nearby gas station. Shortly thereafter, Detective Ripley pulled into the station and nodded and waved toward him. Tankard walked over to the detective's undercover vehicle, opened the passenger door, and asked him what he was looking for. When Detective Ripley responded that he was looking for a "$20.00 stone,"[1] Tankard got into the vehicle, shut the door, and told him that he could get it for him. Tr. at 123. He gave driving directions to Detective Ripley, and the two ended up in front of the two Leith Street houses. The detective gave Tankard twenty dollars and told him to give him an item to ensure that he would return with the drugs and not just take his money and leave. Tankard gave him his identification card as collateral, left with the money, and entered one of the houses. Detective Ripley then saw a male leave that house, enter the adjacent house, and return to the first house.[2] Shortly thereafter, Tankard returned to the detective's vehicle, got in, and handed the detective a white folded paper containing a chunky white substance. Detective Ripley argued with Tankard about the quality of the crack, and Tankard assured him that it was "good crack cocaine." *Id*. at 131. The two drove off, and Tankard got out a crack pipe. Moments later, Detective Ripley signaled his assisting officers, who conducted a traffic stop of his vehicle. The officers arrested Tankard and seized his crack pipe from the passenger's side floor. Field and lab

---

[1] Detective Ripley testified that a "$20.00 stone" is a slang term for a $20.00 rock of crack cocaine. Tr. at 123.

[2] Detective Ripley testified that using two houses is a common practice in drug dealing, with the street-level dealer presenting the money inside one house, and a runner retrieving the drugs from the second house and returning to the first house to give them to the street-level dealer. Tr. at 130.

testing confirmed that the crack rock that Tankard purchased for Detective Ripley contained cocaine and weighed 0.12 grams.

On March 4, 2011, the State charged Tankard with class B felony dealing in cocaine. On September 28, 2011, a jury convicted him as charged. On October 24, 2011, the trial court sentenced him to seventeen years, with fifteen years executed and two years suspended to probation. This appeal ensued. Additional facts will be provided as necessary.

## Discussion and Decision

### I. "Delivery" Instruction

Tankard challenges the trial court's jury instruction defining "delivery" in the context of dealing cocaine. We review a trial court's decision to give or refuse a jury instruction using an abuse of discretion standard. *Whitney v. State*, 750 N.E.2d 342, 244 (Ind. 2001). In conducting our review, we consider whether the instruction correctly states the law, is supported by the evidence in the record, and is covered in substance by other instructions. *Id*. "[E]rror in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case." *Id*. (citation and quotation marks omitted).

Tankard argues that the trial court's definition of delivery did not comport with the statutory definition, which states, "'Delivery' means: (1) an actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship; or (2) the organizing or supervising of an activity described in subdivision (1)." Ind. Code § 35-48-1-11. The trial court instructed the jury as follows:

> The term delivery means actual or constructive transfer from one person or from another of a controlled substance whether or not there is an agency

4

relationship or the organization or supervision of an actual or constructive transfer from one person to another of a controlled substance and whether or not there's—whether or not there is an agency relationship.

Tr. at 219-20.

Notably, Tankard did not object when the trial court gave the delivery instruction. He therefore has waived the issue for appeal. *See Hall v. State*, 937 N.E.2d 911, 913 (Ind. Ct. App. 2010) (stating that failure to object to instruction at trial typically results in waiver of issue on appeal absent fundamental error). Waiver notwithstanding, we find that despite the somewhat inartful wording, the instruction varies from the statute only to the extent that it explains in long-form what constitutes "an activity described in subdivision (1)." Ind. Code § 35-48-1-11(2). As such, the instruction correctly states the law, does not mislead the jury, and, as discussed below, is supported by the evidence. Thus, we find no abuse of discretion here.[3]

## II. Sufficiency of Evidence

Tankard asserts that the evidence is insufficient to support his conviction for dealing in cocaine. When reviewing a sufficiency of evidence claim, we neither reweigh evidence nor assess witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the verdict. *Stokes v. State*, 801 N.E.2d 1263, 1271 (Ind. Ct. App. 2004), *trans. denied*. We will affirm the conviction unless no reasonable trier of fact could find the elements of the crime proven beyond a reasonable doubt. *Maish v. State*, 916

---

[3] Consequently, we need not address Tankard's claim of fundamental error.

N.E.2d 918, 921 (Ind. Ct. App. 2009).

Indiana Code Section 35-48-4-1(a)(1)(C) states that a person who knowingly or intentionally delivers cocaine, pure or adulterated, commits dealing in cocaine, a class B felony. Essentially, Tankard claims that although he physically handed the crack to Detective Ripley, his intent was merely to allow Detective Ripley to inspect it before the two would smoke it together. He relies on *Hyche v. State*, 934 N.E.2d 1176 (Ind. Ct. App. 2010), *trans. denied* (2011), and claims that he did not knowingly relinquish possession and control of the cocaine to another. We disagree and find *Hyche* to be distinguishable.

In *Hyche*, the defendant's felony murder conviction was predicated upon a finding that he committed a felony dealing offense. We vacated his conviction, finding that he merely arranged to purchase drugs for his own use and that the record was devoid of any other evidence that he was transferring the drugs he purchased. *Id*. at 1179. Thus, Hyche was not acting on the distribution side of a drug transaction; he was merely a transferee and not a transferor. *Id*. In contrast, Tankard used money provided by Detective Ripley to purchase a crack rock, which he then delivered to the detective. Thus, he acted on the distribution side.

In asking us to find that he was merely acting as a user, Tankard asks that we reweigh evidence and disregard Detective Ripley's lengthy testimony about his undercover investigation of drug dealing activity in the area. Specifically, the detective testified that police had received reports from members of the community about drug trafficking in the area surrounding the gas station. Tr. at 118-34. He described a "pyramid" drug dealing hierarchy involving addicts who act as street-level dealers. *Id*. at 118-19. He stated that the

6

street-level dealers accompany buyers to a drug house, take the buyer's money into the house, return with the drugs, and give them to the buyer.[4] To support their habit, these street-level dealers often receive their pay in the form of drugs. In addition to any cash or drugs that they may receive from the upper-level dealers, they often expect to receive a "pinch off" from the buyer in exchange for their services. *Id*. at 134. Detective Ripley also described common signals that a potential buyer would use to gain the attention of a street-level dealer as well as the common practice of requiring some collateral from the street-level dealer to prevent him from simply absconding with the buyer's money.

The evidence supports a reasonable inference that Tankard was a street-level dealer. He recognized Detective Ripley's signals as those of a potential buyer, asked him what he was looking for, got into his vehicle, and directed him to the drug house. He took the detective's money in exchange for collateral in the form of his ID, obtained the crack rock, gave it to the detective, and assured him that it was good cocaine. To the extent he claims that his possession of a crack pipe is evidence that he merely intended to *use* crack with an acquaintance, he invites us to reweigh evidence and assess witness credibility, which we may not do.

In short, the evidence most favorable to the verdict indicates that Tankard did not merely want to get high with a new acquaintance; he *delivered* drugs, hoping to get a small portion of the drugs as payment. Consequently, we conclude that the evidence is sufficient to

---

[4] Detective Ripley also explained that it is common, as here, for drug dealers to work out of neighboring houses to decrease the likelihood of detection and seizure of the drugs.

7

support his dealing conviction.

## III. *Appropriateness of Sentence*

Finally, Tankard asks that we reduce his sentence pursuant to Indiana Appellate Rule 7(B), which provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [this] Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When a defendant requests appellate review and revision of his sentence, we have the power to affirm, reduce, or increase the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010). In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is "inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). A defendant bears the burden of persuading this Court that his sentence meets the inappropriateness standard. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218; *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

In considering the nature of a defendant's offense, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Anglemyer*, 868 N.E.2d at 494. Tankard was sentenced to seventeen years for class B felony dealing in cocaine, which carries a six-to-twenty-year sentencing range and a ten-year advisory term. Ind. Code § 35-50-2-5. His seventeen-year sentence consists of fifteen years executed and two years suspended to probation. The difference between time executed and time suspended to probation is relevant in determining inappropriateness of sentence. *Jenkins v.*

*State*, 909 N.E.2d 1080, 1085 (Ind. Ct. App. 2009), *trans. denied*.

Tankard characterizes his offense as an innocuous situation in which he, a homeless addict, merely acted as a user hoping to share the spoils of another man's drug purchase so that he could get high. As discussed, we find that he was acting as a dealer, not a user. However, we agree with his characterization to the extent that he describes the instant offense as nonviolent, victimless, and involving a miniscule amount of cocaine. Despite the detective's lengthy testimony describing the pyramid drug-dealing hierarchy in which Tankard was involved, Tankard's role was that of a small-time dealer in a run-of-the-mill drug deal. Nevertheless, Appellate Rule 7(B) requires that we consider *both* the nature of the offense and the character of the offender.

In assessing Tankard's character, we first note that he has failed to include a copy of the presentence investigation report ("PSI") in the record on appeal. As such, he has provided us with an incomplete record upon which to assess his character. Our supreme court has said,

> It is the duty of an appellant to present a record that is complete and that supports his claim of error so that an intelligent review of the issues may be made. An appellant must see that the record of proceedings contains all pleadings, papers, and transcripts of testimony which disclose and have any bearing on the error he is alleging. Any error alleged but not disclosed by the record, or any matter not contained in the record, will not be a proper subject for review.

*Turner v. State*, 508 N.E.2d 541, 543 (Ind. 1987) (citation and quotation marks omitted).

We note that the trial court *did* have access to the PSI and relied on it in sentencing Tankard. The court's judgment/sentencing statement says,

9

> The Court, *having considered the written Pre-Sentence Investigation Report*, now finds:
> Aggravators: Lengthy criminal history includes 37 misdemeanors; resisting, battery, domestic battery, selling drugs to minors. 7 felonies including weapons and drugs, violent offenses, escape 3 times, 4 parole violations, multiple revocations, active warrant in Kent County, Delaware, multi-state offender. Prior attempts at rehabilitation have failed.
> Mitigators: None.

Appellant's App. at 53 (emphasis added).

Tankard portrays himself as a "jobless, penniless, and homeless" crack addict who merely wanted to get high. Appellant's Br. at 16-17. However, based on the record before us, we find that his extensive criminal history and his repeated noncompliance with alternative sentencing options bespeak an extremely unsavory character. He is a frequent flyer in the criminal justice system and has failed to learn from his mistakes. He has a pattern of disregard for the law and has abused the leniency previously afforded him. He is not merely a drug user, and he has sold drugs even to children. Although this transaction with Detective Ripley was nonviolent, his criminal history includes at least one weapons-related conviction as well as other violent offenses, including domestic battery. Thus, his criminal history indicates a propensity for violence. In short, he has failed to meet his burden of demonstrating that his sentence is inappropriate. Accordingly, we affirm.

Affirmed.

VAIDIK, J., and BRADFORD, J., concur.