# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 30 2015, 10:47 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Mark Leeman
Leeman Law Offices
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J. T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

Ronald Moore,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 30, 2015

Court of Appeals Case No.
09A02-1411-CR-792

Appeal from the Cass Superior Court.
The Honorable Rick Maughmer, Judge.
Cause No. 09D02-1207-FA-1

## Garrard, Senior Judge

[1]     Ronald Moore appeals from his conviction and sentence after a jury trial on one count of dealing in a schedule I controlled substance[1] as a Class B felony,

---

[1] Ind. Code § 35-48-4-2 (2011).

contending that: 1) the trial court abused its discretion by allowing the admission of surveillance video; 2) the prosecutor engaged in prosecutorial misconduct in statements made in closing argument rebuttal; 3) the evidence was insufficient to support the conviction; 4) the trial court abused its discretion by failing to consider mitigating circumstances during sentencing; and 5) Moore's sentence is inappropriate in light of the nature of the offense and the character of the offender. We affirm.

[2] After her arrest in August 2011 for dealing in methamphetamine, Debra Metz, formerly known as Debra Hinton, agreed to work as a confidential informant for the Cass County Drug Task Force, and in exchange her bond was drastically reduced. Metz was not specifically promised anything in return for her work, but she made it clear that she hoped that her work would "affect [her] charges." Tr. p. 66. On January 15, 2012, while working as a confidential informant, Metz arranged a controlled buy from Moore, who was an acquaintance. Metz asked Moore to obtain "Defense," which meant she wanted some heroin. *Id.* at 54. Moore agreed to get the heroin for Metz and arranged for the two to meet at the Logansport YMCA.

[3] Metz contacted Cass County Drug Task Force member Officer Brandon Bonnell about the potential buy. Bonnell and Cass County Sheriff's Department Officer Pat Zeider met with Metz to prepare her for the transaction. The officers searched Metz, searched her truck, provided her with $25 in buy money, and gave her a transmitter. Metz drove to the Logansport

YMCA with police officers following her to the location, maintaining surveillance of her throughout the transaction.

[4] Moore left the YMCA and entered Metz's truck. Moore told Metz that they needed to "go get it" because he did not have the heroin with him. *Id.* at 58. Metz drove the two to a white house located at 14th and Market streets, with the police following behind. Metz stayed inside her truck while Moore entered the house, and returned to and re-entered Metz's truck. Metz gave Moore the $25 buy money and drove the two back to the YMCA. During the return trip Moore gave Metz the heroin. Testing by an employee of the Indiana State Police Laboratory later identified the white residue inside the foil wrapper to be a .07 gram mixture of heroin and Benadryl.

[5] Metz left and returned to the agreed-upon location where officers searched her and her vehicle and took the heroin. None of the buy money was located. The officers also showed her a photograph of Moore from the Bureau of Motor Vehicles, which she identified as a photograph of the man who had just sold the heroin to her. After watching the surveillance video recorded by the officers, Metz was able to identify the truck depicted in the video as the one she had driven that night, and that the voices on the recording belonged to her and to Moore.

[6] Officer Bonnell knew of Moore prior to the controlled buy, but had never met him in person. After Officer Bonnell unsuccessfully attempted to serve the arrest warrant at Moore's address, he left his business card with a woman who

lived there. Moore called the officer, but refused to meet with him, asking instead if he was going to jail and for the name of the person who had "snitched on him." *Id.* at 100. When the officer informed Moore of the charges against him, Moore did not deny the charges.

[7] The State charged Moore with one count of dealing in heroin, a schedule I controlled substance, as a Class B felony. At the conclusion of Moore's jury trial he was found guilty as charged, and he admitted to being a habitual offender. The trial court sentenced Moore to eighteen years executed, enhanced by ten years based upon his status offense. Moore now appeals.

# I. Admission of Surveillance Video

[8] Moore claims that the trial court abused its discretion by admitting surveillance video of the controlled buy because of the poor quality of the recording. The State contends that since Moore has waived review of this issue by failing to raise that objection below, the only ground available for review of its admissibility is fundamental error.

[9] In laying the foundation for admission of the surveillance video, the State asked Officer Zeider about State's Exhibit 1, the DVD of the surveillance video. When Officer Zeider referred to it as a copy of the video, Moore's counsel asked about the original. The officer explained that he had filmed the surveillance operation by using the video function of his camera, which he did not want admitted in evidence in every trial, downloaded the video to his computer, and burned a DVD of the video for use at trial. Moore's objection to

the admission of the video appeared to be one under the best evidence rule, contending that "the SIM card[']s the original video." *Id.* at 36. The trial court asked Moore for the evidentiary rule supporting his objection to the exhibit, but before Moore could provide one, the trial court overruled the objection and admitted State's Exhibit 1 which was played for the jury.

[10] The trial court then took a brief recess to discuss the admission of the video. The colloquy between the trial court and counsel concerned whether Moore could be seen on the video and if the video connected Moore to the controlled buy. The trial court told Moore's counsel that he overruled the objection on the basis of Indiana Evidence Rule 403, but might have sustained the objection on Evidence Rule 402. After watching the first part of the video again, the trial court stated that the video "may be 402 relevant." *Id.* at 39.

[11] Moore's argument on appeal is that the quality of the video is so poor that it left the jury to speculate as to its content, and was prejudicial to him because Metz was allowed to summarize the content of the segments of video on the recording, and that the jury was left to infer that the video's contents harmed Moore's defense. This issue, however, is waived for review for failure to raise it below, and as a consequence our review will be limited to one for fundamental error.

[12] Indiana Evidence Rule 402 provides that relevant evidence is admissible unless excluded by constitutional provisions, statutes, the evidentiary rules, or other rules. Indiana Evidence Rule 403 provides that relevant evidence may be

excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, undue delay, or the needless presentation of cumulative evidence.

[13] We agree that the quality of the surveillance video leaves something to be desired, but assuming without deciding that the trial court erred by admitting the video in evidence, even the erroneous admission of evidence which is cumulative of other evidence admitted without objection does not constitute reversible error. *Hoglund v. State*, 962 N.E.2d 1230, 1240 (Ind. 2012).

[14] The video was cumulative of Metz's testimony that she called Moore, a person with whom she was familiar and later identified in court, arranged to purchase some heroin, met with him, and received a foil wrapper containing heroin from him. Further, fundamental error requires a defendant to show greater prejudice than ordinary reversible error because no objection has been made. *Wilson v. State*, 931 N.E.2d 914, 919 (Ind. Ct. App. 2010), *trans. denied*. Moore has not established that the trial court's ruling amounted to fundamental error.

## II. Prosecutorial Misconduct

[15] Moore claims that the State engaged in prosecutorial misconduct during its closing argument rebuttal with respect to the State's inability to obtain DNA or fingerprint evidence from the foil used during the transaction. When reviewing a claim of prosecutorial misconduct we first consider whether the prosecutor engaged in misconduct and then turn to whether that misconduct placed the defendant in a position of grave peril to which he should not have been

subjected. *Collins v. State*, 966 N.E.2d 96, 106 (Ind. Ct. App. 2012). We refer to case law and the Rules of Professional Conduct in making the determination of what constitutes prosecutorial misconduct in argument. *Id.* The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision, rather than the degree of impropriety of the conduct. *Id.*

[16] Moore did not object to the prosecutor's closing rebuttal argument. When a prompt objection to the alleged prosecutorial misconduct is not made, any claim of error is waived unless the defendant can establish fundamental error on appeal. *Id.* For fundamental error to be found the error must constitute a blatant violation of basic principles, the harm or potential harm must be substantial, and the resulting error must deny the defendant fundamental due process such that a fair trial is impossible. *Id.*

[17] During closing argument by Moore's counsel, he challenged the State's efforts to determine who lived at the house where Moore was alleged to have purchased the heroin, claimed that he knew who lived there and that it was not difficult for him to determine, and observed that the State had not bothered to request DNA or fingerprint testing on the foil wrapper. Tr. pp. 130-31. Later during closing argument, Moore's counsel noted reports in the newspaper and on television about people who were wrongly convicted, but later released due to the presence or absence of DNA evidence. *Id.* at 132.

[18] During the State's closing rebuttal argument, the prosecutor directly responded to defense counsel's argument by noting that those cases of reversals based on

DNA evidence are publicized because they are the exception and not the norm. *Id.* at 133. The State argued that "You're not going to have DNA on a piece of foil this big. Do you think that you can get fingerprints from a piece of foil this big?" *Id.*

[19] Prosecuting attorneys are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable. *Cooper v. State*, 854 N.E.2d 831, 836 (Ind. 2006). Here, it is clear that the prosecutor's comments were in direct response to defense counsel's comments. The State responded to the comments, suggesting that DNA and fingerprint evidence could not be obtained from that small of a piece of foil. On appeal, Moore argues that the prosecutor's response is not supported by the evidence. We find this argument to be unpersuasive. The only material from which DNA or fingerprint evidence might have been obtained to connect Moore with the crime was the foil. Moore's counsel suggested the lack of effort to obtain the evidence and the State properly responded to that allegation. We find no error here let alone error rising to fundamental error.

## III. Insufficient Evidence

[20] Next, Moore argues that there is insufficient evidence to support his conviction, claiming that the evidence merely establishes that he was a purchaser of heroin, not a dealer, and characterizes his actions as that of a go-between. When we review a challenge involving the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences

supporting the fact-finder's decision, as it is the fact-finder's role to assess witness credibility and the weight assigned to the evidence. *Bowman v. State*, 32 N.E.3d 812, 813 (Ind. Ct. App. 2015). We affirm a conviction unless no reasonable fact-finder could find that the elements of the crime had been proven beyond a reasonable doubt. *Id.*

[21] In order to establish that Moore committed Class B felony dealing in a schedule I controlled substance, the State was required to prove beyond a reasonable doubt that Moore knowingly or intentionally delivered heroin to Metz. Ind. Code § 35-48-4-2.

[22] Here, the evidence established that Metz contacted Moore about the purchase of heroin and the two agreed to meet at the YMCA. Moore entered the truck Metz was driving and the two went to a location where Moore obtained the heroin. Metz testified at trial that she gave twenty-five dollars in buy money to Moore and that he handed her a foil wrapper containing the heroin. She then completed her work as a confidential informant by surrendering the heroin to the police officers.

[23] Moore likens his case to the circumstances leading to the reversal of the defendant's convictions in *Hyche v. State*, 934 N.E.2d 1176 (Ind. Ct. App. 2010), *trans. denied*, but we find that case to be factually distinguishable. In *Hyche*, the defendant called someone to locate ecstasy pills and was given information about a person from whom he could arrange to purchase the pills. When that person who had the pills and his friend arrived at the agreed upon location, they

saw two people, one of whom they were able to verify was Hyche, the defendant. The vehicle was fired upon, however, and the seller was shot in the back of the head while his passenger died from his wounds at the scene. After a jury trial, Hyche was found not guilty of murder, but was found guilty of felony murder and dealing in a controlled substance.

[24] On appeal, we reversed Hyche's convictions, finding persuasive Hyche's argument that he was merely attempting to purchase ecstasy, not to deal in it. We cited the statutory definition of delivery, which means "(1) an actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship; or (2) the organizing or supervising of an activity described" in the first subdivision. Ind. Code § 35-48-1-11 (1990). The State argued that by calling someone to gather contact information, Hyche had organized the transfer of a controlled substance from one person to another. We held that because Hyche was a transferee, and not the transferor of the controlled substance there was insufficient evidence to support his conviction for dealing and that his felony murder conviction therefore could not stand either. *Hyche*, 934 N.E.2d at 1180.

[25] In the present case, on the other hand, Moore went to the source of the heroin and gave it to Metz in exchange for money; therefore, Moore was not merely a purchaser of the heroin. Other cases distinguished in the *Hyche* opinion actually defeat Moore's argument that because he was merely a go-between, his conviction cannot stand. For instance, in *Smalley v. State*, 732 N.E.2d 1231 (Ind. Ct. App. 2000), the defendant took the undercover officer to a person who

provided a bag of the controlled substance to both the defendant and the officer. Using the statutory definition of "delivery" we held that the defendant's conviction could be supported under the theory that he organized the transfer of the controlled substance to the officer, or that he actually transferred the controlled substance to the officer. *Id.* at 1236. Here, Moore delivered the heroin from the dealer to Metz, and was thus guilty of dealing in a controlled substance. Metz, on the other hand, would not be guilty of that same offense, since, like the defendant in *Hyche*, she was the purchaser of the heroin. There is sufficient evidence to support Moore's conviction.

## IV. Failure to Find Mitigators

[26] Moore contends that the trial court abused its discretion by failing to find the circumstances of the crime as a mitigating factor for purposes of sentencing. The sentencing range for a Class B felony at the time Moore committed the offense was a fixed term of between six years and twenty years with the advisory sentence being ten years. Ind. Code § 35-50-2-5 (2005). The trial court sentenced Moore to eighteen years executed for the Class B felony conviction. Moore faced a sentence of between ten years and thirty years for his status offense. Ind. Code § 35-50-2-8 (2005). The trial court enhanced Moore's sentence by ten years due to Moore's status.

[27] Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). An abuse

of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* One way in which a trial court may abuse its discretion is by entering a sentencing statement that omits mitigating factors that are clearly supported by the record and advanced for consideration. *Id.* at 490-91.

[28] Moore claims that the trial court should have considered 1) the amount of heroin sold was small, 2) this was a controlled buy supervised by law enforcement, 3) he was not selling to children, 4) he did not brandish or carry a firearm, 5) there was no serious harm caused or threatened to people or property, 6) Moore did not sell to a vulnerable buyer or take advantage of same, and 7) the informant initiated the sale, which was filmed and supervised by law enforcement.

[29] With respect to the sentence imposed for the underlying felony conviction, the record reflects that Moore was on probation at the time he committed the offense and had a fairly extensive criminal history dating back to 1984 when Moore was twenty-one years old. Moore argued that some consideration should be given to the mitigating factor of his age and the likelihood that he would be unable to re-enter society as a productive citizen if given the maximum sentence. The State emphasized that Moore had numerous arrests not resulting in convictions, had accumulated five felony convictions, has had multiple probation violations when placed on probation, admitted to having a

substance abuse problem, and owed over $20,000.00 in child support at the time of sentencing.

[30] The finding of mitigating factors is not mandatory, but rests within the trial court's discretion. *Storey v. State*, 875 N.E.2d 243, 252 (Ind. Ct. App. 2007), *trans. denied*. Further, a trial court is not required to accept the defendant's arguments as to what constitutes a mitigating factor. *Id.* However, a trial court may not ignore facts in the record that would be in mitigation, and a failure to find mitigating circumstances that are clearly supported by the record may imply that the trial court failed to properly consider them. *Id.*

[31] A trial court's failure to include within the record an express statement that it considered all proffered mitigating circumstances does not necessitate the assumption that the trial court overlooked mitigating factors that are clearly supported by the record. *Widener v. State*, 659 N.E.2d 529, 534 (Ind. 1995). A trial court is only required to include within the record a statement that it considered mitigating circumstances found by the court to be significant. *Id.* Under the circumstances of this case, including Moore's extensive criminal history, we cannot conclude that the circumstances of the drug deal or Moore's age were so significant as to constitute overlooked mitigating factors. We find no abuse of discretion here.

[32] Moore argued at sentencing that he should receive favorable treatment with respect to the enhancement due to his status. Moore admitted his status, saving the jury and the trial court from the effort involved in resolving that allegation.

The trial court imposed the lowest mandatory sentence enhancement allowed by statute. We find no abuse of discretion with respect to the trial court's decision.

# V. Inappropriate Sentence

[33] The Indiana Constitution, article VII, section 4, authorizes the independent appellate review and revision of a sentence imposed by the trial court, and that review has been incorporated in Indiana Appellate Rule 7. Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if we find that it is inappropriate in light of the nature of the offense and the character of the offender.

[34] With respect to the nature of the offense, it is true that the quantity of the controlled substance that was delivered was small, and the price was correspondingly slight. However, the controlled substance Moore delivered to his friend was heroin. Further, even though the deal was not completed there, Moore arranged for them to meet at the YMCA, a not-for-profit community organization, to conduct the deal.

[35] With respect to the character of the offender, Moore's criminal history dates back to 1984, including numerous arrests and five felony convictions. It is true that the significance of a defendant's criminal history varies based on the gravity, nature and number of prior offenses in relation to the current offense. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). Further, we acknowledge that a record of arrests, standing alone, is not evidence of a

defendant's criminal history, but it is appropriate for the purpose of considering that record as a poor reflection on the defendant's character. *Id.* This is so because it may reveal that the defendant is undeterred from criminal activity despite being subjected to the police authority of the State. *Id.*

[36] While Moore argues that his role in the offense was merely a go-between for a friend and a supplier of heroin, his criminal history casts a different light on Moore's character. Moore admitted that his use of cocaine and heroin have caused him significant problems in his life, and he admitted to abusing cocaine, heroin, and marijuana in the past. He completed substance abuse programs during a prior incarceration in the Department of Correction, but he has failed to alter his criminal behavior. His convictions include possession of controlled substances. Moore was on probation at the time he committed this offense and owed $20,000.00 in child support.

[37] We conclude that Moore's sentence is not inappropriate in light of the nature of the offense and the character of the offender.

[38] In light of the foregoing, we affirm the trial court's decision.

[39] Affirmed.

Robb, J., and Pyle, J., concur.