# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10067

United States Court of Appeals
Fifth Circuit

**FILED**
August 11, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff–Appellee,

v.

WAYLAND DEMOND HINKLE,

      Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before PRADO, OWEN, and HAYNES, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Wayland Demond Hinkle appeals his sentence, contending that the district court erred in determining that he was a career offender within the meaning of § 4B1.1(a) of United States Sentencing Guidelines.[1]  Hinkle argues that neither of his prior Texas convictions, one for burglary and the other for delivery of a controlled substance, constitutes a predicate offense under the career-offender guidelines provision.  Our decision turns upon whether the particular Texas statutes at issue are divisible such that a court may use the modified categorical approach to determine whether a defendant convicted

---

[1] U.S.S.G. § 4B1.1(a) (2013).

under Texas law of knowingly delivering a controlled substance was convicted of delivery by one of the particular means proscribed under Texas law.  In light of the Supreme Court's recent decision in *Mathis v. United States*,[2] we conclude that Hinkle's conviction for delivery of a controlled substance is not a "controlled substance offense" within the meaning of the Guidelines, and therefore, the career-offender enhancement did not apply based on the record presently before us.  We vacate Hinkle's sentence and remand for resentencing.

# I

During a sting operation, Hinkle sold 0.3 grams of crack cocaine to a confidential informant working for the Fort Worth Police Department.  Hinkle pleaded guilty to possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

Hinkle was over 18 years of age when he committed this offense, and it was a "controlled substance offense" within the meaning of § 4B1.1(a) of the federal sentencing guidelines.  His sentence was therefore subject to being enhanced under the "Career Offender" Guidelines provision, § 4B1.1, if he had "at least two prior felony convictions of either a crime of violence or a controlled substance offense."[3]  The Presentence Report (PSR) construed § 4B1.2, which defines "controlled substance offense"[4] and "crime of violence,"[5] as including Hinkle's prior conviction for delivery of heroin and his prior conviction for

---

[2] 136 S. Ct. 2243 (2016).

[3] U.S.S.G. § 4B1.1(a):

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

[4] *Id*. § 4B1.2(b).

[5] *Id*. § 4B1.2(a)(2).

burglary, an enumerated "crime of violence."[6]     The PSR applied an enhancement under § 4B1.1(b) and calculated an advisory sentencing range of 151 to 188 months of imprisonment.     Without the career offender enhancement, the advisory sentencing range would have been 33 to 41 months of imprisonment.

In a written objection, Hinkle challenged the PSR's career-offender determination, asserting that the Texas statute under which he was convicted for delivery of heroin[7] does not qualify as a "controlled substance offense" under the Guidelines because it criminalizes conduct that is not included within the Guidelines' definition of a "controlled substance offense."     He noted in his objections, and this court has held, that a conviction can be obtained under this Texas statute by proving only an offer to sell, and an offer to sell does not constitute a "controlled substance offense" within the meaning of the Guidelines.[8]     Citing the Supreme Court's decision in *Descamps*,[9] Hinkle asserted that the court could not consider underlying documents in order to determine whether Hinkle was convicted of offering to sell a controlled substance or instead was convicted of a form of delivering a controlled substance that would come within the Guidelines' definition of a "controlled substance conviction."     The district court overruled Hinkle's objection and sentenced him to 188 months' imprisonment.  Hinkle has appealed.

---

[6] *Id.* ("The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . is burglary of a dwelling. . . .").

[7] TEX. HEALTH & SAFETY CODE § 481.112(a).

[8] *See, e.g.*, *United States v. Price*, 516 F.3d 285, 287 (5th Cir. 2008); *United States v. Gonzalez*, 484 F.3d 712, 714-15 (5th Cir. 2005); *United States v. Garza-Lopez*, 410 F.3d 268, 274 (5th Cir. 2005).

[9] *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013).

## No. 15-10067

## II

Before Hinkle was convicted in federal court of the present offense, he was convicted in a Texas state court of a drug-related offense. The Texas statute of conviction, Texas Health & Safety Code section 481.112(a), provides that a person commits an offense if he or she "knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance."[10] A separate section, 481.002(8), defines "deliver" as

> to transfer, actually or constructively, to another a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship. The term includes offering to sell a controlled substance, counterfeit substance, or drug paraphernalia.[11]

Section 4B1.2 of the Guidelines defines a controlled substance offense as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.[12]

In determining whether a prior conviction is included within an offense defined or enumerated in the Guidelines, we have generally looked only to the elements of the prior offense, not to the actual conduct of the defendant in

---

[10] TEX. HEALTH & SAFETY CODE § 481.112(a). We held post-*Descamps* that § 481.112(a), which criminalizes the "discrete acts" of "manufacturing, delivering, and possessing with intent to deliver," is divisible and the parties do not contend otherwise. *See United States v. Teran-Salas*, 767 F.3d 453, 459 (5th Cir. 2014).

[11] TEX. HEALTH & SAFETY CODE § 481.002(8).

[12] U.S.S.G. § 4B1.2(b).

committing the offense.[13]  We employ the so-called "categorical" approach.[14] The Government concedes that if Hinkle were convicted of delivering a controlled substance "by offering to sell" that substance, the crime would not come within the definition of a "controlled substance offense" under § 4B1.2. However, the Government contends that the Texas indictment pursuant to which Hinkle was convicted did not charge Hinkle with offering to sell heroin but instead charged that he "knowingly delivered" a controlled substance "by actually transferring said controlled substance."

The question in this appeal is whether the Texas statutes under which Hinkle was convicted are "divisible."[15]  A statute is "divisible" when it "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile."[16]  As the Supreme Court explained in *Descamps*,

> [i]f one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction.[17]

We must resolve whether the definition of "deliver" in section 481.002(8) in conjunction with section 481.112(a) sets forth different offenses, such that

---

[13] *See, e.g.*, *United States v. Carrasco-Tercero*, 745 F.3d 192, 195 (5th Cir. 2014) ("This court employs a categorical approach in determining whether an offense qualifies as a crime of violence under § 2L1.2. '[W]e examine the elements of the offense, rather than the facts underlying the conviction or the defendant's actual conduct, to determine whether an offense meets the definition of a [crime of violence].'" (quoting *United States v. Ortiz-Gomez*, 562 F.3d 683, 684 (5th Cir. 2009))).

[14] *See id.*

[15] *See, e.g.*, *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013).

[16] *Id.* (emphasis in original).

[17] *Id.*

delivering a controlled substance by "offering to sell" it is a separate and distinct offense from delivering a controlled substance by "transfer[ing], actually . . . , to another a controlled substance."[18]  Hinkle contends that the various definitions of "deliver" in section 481.002(8) of the Texas statute are not elements of separate offenses but are various means of committing the offense of "deliver[ing] . . . a controlled substance."  The Government contends that the Texas indictment can be used to "narrow" the offense of which Hinkle was convicted to the offense of "deliver[ing] . . . a controlled substance" by "transfer[ing] [it] actually . . . to another."  Both rely on *Descamps*[19] in support of their respective positions.

## III

We first consider the Government's contention that Hinkle's objection in the district court differs from the argument that he has pursued in our court and therefore that the plain error standard of review applies.  The Government acknowledges that in the district court, Hinkle argued "that *Descamps* changed this Court's precedent and rendered delivery under section 481.112(a) indivisible."  The Government contends that on appeal

> Hinkle does not now dispute that *Shepherd* documents can be used
> to specify whether he was convicted of manufacturing heroin,
> delivering heroin, or possessing heroin with intent to deliver it.
> But in his view that is all they can do.  Once they establish that
> his conviction was predicated on delivering heroin, he argues that
> they cannot then be used to specify whether he "delivered" heroin
> by actually transferring it, constructively transferring it, or
> offering it for sale because those are "means" not "elements."

---

[18] TEX. HEALTH & SAFETY CODE § 481.002(8).

[19] *Descamps*, 133 S.Ct. 2276.

No. 15-10067

We see little distinction between Hinkle's contention in the district court that *Descamps* "rendered delivery under section 481.112(a) indivisible" and the Government's characterization of Hinkle's argument on appeal.

In any event, Hinkle's written objection in the district court made clear his contention that "it is no longer sufficient for the government to show that there are 'multiple ways to violate' a state statute" and that "[i]n order to invoke the 'modified categorical approach' after *Descamps*, the government needs to establish that the state statute has multiple sets of alternative elements, set out in the disjunctive." Hinkle contended in the district court and maintains in this court that the definition of "delivery" sets forth varying means of committing the crime of knowingly delivering a controlled substance rather than setting forth elements of separate "delivery" offenses. He argues that the offense of knowingly delivering a controlled substance is broader than the Guidelines' definition of a controlled substance offense because the Texas offense criminalizes an offer to sell while the federal definition does not include such an offense. Accordingly, we disagree with the Government that we should review only for plain error. The arguments that Hinkle pursues in his appeal were adequately set forth in the district court. "For properly preserved claims, this court reviews the district court's interpretation and application of the Sentencing Guidelines *de novo*."[20]

### IV

While this appeal was pending, the Supreme Court issued its opinion in *Mathis v. United States*.[21] That opinion sets forth how a court determines whether a statute is divisible and therefore whether, in employing the modified

---

[20] *United States v. Cedillo-Narvaez*, 761 F.3d 397, 401 (5th Cir. 2014).

[21] 136 S. Ct. 2243 (2016).

categorical approach, documents pertaining to the prior conviction may be used to ascertain if that conviction comes within a federal definition of an offense or has the elements of an enumerated offense. The decision in *Mathis* plainly and unmistakably leads to the conclusion that the definition of "delivery" in section 481.002(8), as authoritatively interpreted by the Texas Court of Criminal Appeals,[22] sets forth various means of committing an offense and does not set forth in the disjunctive separate offenses.

The Supreme Court's decision in *Mathis* dealt with the Armed Career Criminal Act (ACCA),[23] not the federal sentencing Guidelines. However, the primary focus of the Court's decision in *Mathis* was how to determine whether a statute is "divisible" and therefore whether the modified categorical approach can be used to determine, when a statute defines more than one offense, of which offense a defendant was convicted.[24] The decision in *Mathis* clarified when and how the modified categorical approach is applied in the context of federal sentencing. With exceptions not relevant to this appeal,[25] we have generally used the categorical and modified categorical approaches in applying

---

[22] *See Lopez v. State*, 108 S.W.3d 293, 299 (Tex. Crim. App. 2003) (citing *Rodriguez v. State*, 89 S.W.3d 699, 701 (Tex. App.—Houston [1st Dist.] 2002, pet ref'd)).

[23] *Mathis*, 136 S. Ct. at 2247 (citing the Armed Career Criminal Act, 18 U.S.C. § 924(e)).

[24] *Id.*

[25] *See, e.g., United States v. Charles*, 301 F.3d 309, 313–14 (5th Cir.2002) (en banc) (holding that, in applying U.S.S.G. § 4B1.2, the court will consider the elements of the charges against a defendant, even if they differ from the elements of the statute of conviction, because the commentary to U.S.S.G. § 4B1.2 "states that [o]ther offenses are included as crimes of violence if . . . the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted . . . by its nature, presented a serious potential risk of physical injury to another" (internal quotation marks omitted) (citing *United States v. Fitzhugh*, 954 F.2d 253 (5th Cir. 1992))); *United States v. Pascacio-Rodriguez*, 749 F.3d 353, 366-67 (5th Cir. 2014).

the federal sentencing Guidelines.[26]   The *Mathis* decision is controlling regarding the methodology of the modified categorical approach, and we must apply its holdings, even if they are contrary to prior precedent of this court. Though our court had held, prior to *Descamps* and *Mathis*, that sentencing courts could reference record documents to determine the method of delivery under section 481.002(8) on which a defendant's conviction was based,[27] *Mathis* makes clear that sentencing courts may no longer do so.

The decision in *Mathis* instructs that there is a difference between alternative elements of an offense and alternative means of satisfying a single element.[28]   Elements must be agreed upon by a jury.[29]   When a jury is not required to agree on the way that a particular requirement of an offense is met, the way of satisfying that requirement is a means of committing an offense not an element of the offense.[30]   At issue in *Mathis* was an Iowa burglary statute that proscribed entry into or onto locations that included a building, a structure, land, water or an air vehicle.[31]   Because generic burglary does not proscribe burglary of vehicles, the Iowa offense was overly inclusive; it included conduct that was not generic burglary.[32]   The sentencing court looked to the documents pertaining to Mathis's prior convictions, which revealed that Mathis had burgled structures not vehicles, and the district court concluded

---

[26] *See, e.g., United States v. Najera–Mendoza*, 683 F.3d 627, 629 (5th Cir. 2012) (citing *United States v. Miranda-Ortegon*, 670 F.3d 661, 663 (5th Cir. 2012)).

[27] *See United States v. Garcia-Arellano*, 522 F.3d 477, 480-81 (5th Cir. 2008).

[28] *Mathis*, 136 S. Ct. at 2250.

[29] *Id*. at 2256.

[30] *Id*.

[31] *Id*. at 2250; *see also* IOWA CODE §§ 702.12, 713.1.

[32] *Mathis*, 136 S. Ct. at 2250.

that the sentencing enhancement under the ACCA applied.[33]  The Eighth Circuit affirmed, holding that whether the itemized list of places "amount[ed] to alternative elements or merely alternative means to fulfilling an element, the statute is divisible, and we must apply the modified categorical approach."[34]  The Supreme Court disagreed and reversed the Eighth Circuit because the Iowa Supreme Court has held that the Iowa statute sets forth "alternative method[s] of committing [the] single crime," and an Iowa "jury need not agree on which of the locations was actually involved."[35]

We are instructed by the Supreme Court's decision in *Mathis* that our first task in cases like the one presently before us is to determine whether "listed items" in a statute "are elements or means."[36]  In *Mathis*, as in the present case, "a state court decision definitively answers the question."[37] Texas state courts construing sections 481.112(a) and 481.002(8) of the Texas Health and Safety Code have held that the method used to deliver a controlled

---

[33] *Id.*

[34] *United States v. Mathis*, 786 F.3d 1068, 1075 (8th Cir. 2015).

[35] *Mathis*, 136 S. Ct. at 2250 (quoting *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981)).

[36] *Id*. at 2256.  The Court said:

> The first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means.  If they are elements, the court should do what we have previously approved: review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all others) to those of the generic crime.  But if instead they are means, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution.  Given ACCA's indifference to how a defendant actually committed a prior offense, the court may ask only whether the elements of the state crime and generic offense make the requisite match.

*Id*. (citations omitted).

[37] *Id.*

substance is not an element of the crime. In *Lopez v. State*,[38] the Texas Court of Criminal Appeals cited approvingly a lower court opinion—*Rodriguez v. State*—in which a "jury charge authorized conviction if the jurors found that Rodriguez delivered marijuana by actually transferring, constructively transferring, or offering to sell."[39] The *Rodriguez* court found no error even though there was the "potential for a non-unanimous verdict," concluding that only one offense was committed.[40] The *Lopez* court opined that "[t]he result was a permissible general verdict because the defendant was charged with two alternative theories of committing the same offense, and not two separate deliveries."[41] Texas law is therefore clear, as was the Iowa statute in *Mathis*: section 481.002(8)'s listed methods of delivery "are not alternative elements, going toward the creation of separate crimes. To the contrary, they lay out alternative ways of satisfying [the] single [delivery] element."[42] As the Supreme Court held in *Mathis*, "[w]hen a ruling of that kind exists, a sentencing judge need only follow what it says."[43] We therefore need not utilize the other means set forth in *Mathis* for discerning whether alternatives listed in a statute are elements or means.[44]

The Government cites Texas state court decisions holding that prosecutors must specify the precise method or methods of delivery under

---

[38] 108 S.W.3d 293 (Tex. Crim. App. 2003).

[39] *Id.* at 299 (citing *Rodriguez v. State*, 89 S.W.3d 699, 700-01 (Tex. App.—Houston [1st Dist.] 2002, pet ref'd)).

[40] *Id.* (citing *Rodriguez*, 89 S.W.3d at 701).

[41] *Id.*

[42] *Mathis*, 135 S. Ct. at 2250.

[43] *Id.* at 2256.

[44] *See id.* at 2256-57.

section 481.002(8) in a charging instrument,[45] and that when a single form of delivery is alleged, that method of delivery, and no other, must then be proven beyond a reasonable doubt.[46]  The Government's interpretation of these Texas decisions confuses evidentiary and notice requirements with the elements of an offense.  One of these cases recognizes that Texas law permits a prosecutor to charge more than one method of delivery but does not require proof beyond a reasonable doubt as to each method of delivery charged when more than one method is charged.[47]    The decision in *Stephens* does not say or hold otherwise.[48]

## V

The "delivery" element of Hinkle's crime of conviction criminalizes a "greater swath of conduct than the elements of the relevant [Guidelines] offense."[49]  This "mismatch of elements" means that Hinkle's conviction for the knowing delivery of heroin is not a controlled substance offense under the Guidelines.[50]  That prior conviction cannot serve as a predicate offense under the Career Offender Guideline provision, which is § 4B1.1.

---

[45] *See Ferguson v. State*, 622 S.W.2d 846, 850-51 (Tex. Crim. App. 1981).

[46] *See Conaway v. State*, 738 S.W.2d 692, 694-95 (Tex. Crim. App. 1987); *Stephens v. State*, 269 S.W.3d 178, 183 (Tex. App.—Texarkana 2008).

[47] *See Conaway*, 738 S.W.2d at 694 ("In this instance, the State chose to charge appellant only with actual [sic] delivering the marihuana to Green, thus satisfying the specificity requirement that *Ferguson*[, 622 S.W.2d at 850-51], which held that an indictment which does not specify which kind of delivery was committed is subject to a motion to quash, mandated.  Thus, notwithstanding that the State could have alleged both actual *and* constructive delivery, *see Queen v. State*, 662 S.W.2d 338, 341 (Tex. Crim. App. 1983), it chose only to allege that the delivery occurred by 'actual delivery.'  It was thus bound to prove its allegation beyond a reasonable doubt.").

[48] *See Stephens*, 269 S.W.3d 178.

[49] *Mathis*, 136 S. Ct. at 2251.

[50] *Id.*

No. 15-10067

\*    \*    \*

We VACATE Hinkle's sentence, and REMAND for resentencing.