# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-41069

United States Court of Appeals
Fifth Circuit

**FILED**

October 16, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

JUAN JOSE ESPINOZA-BAZALDUA,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, GRAVES, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:*

Juan Jose Espinoza-Bazaldua appeals the 37-month sentence he received after pleading guilty to illegal reentry. He argues that the district court incorrectly calculated his Guidelines offense level by applying a 16-level increase for his underlying conviction in Indiana of "dealing in marijuana." According to Espinoza-Bazaldua, this conviction is not a "drug trafficking offense" as defined by the United States Sentencing Guidelines. Because Espinoza-Bazaldua has not demonstrated that Indiana's "dealing-in-

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-41069

marijuana" statute criminalizes more conduct than that captured by the Guidelines' generic definition of "drug trafficking offense," we affirm.[1]

## I

Espinoza-Bazaldua pleaded guilty to one count of illegal reentry in violation of 8 U.S.C. §§ 1326(a), (b).  Before his scheduled sentencing hearing, the Probation Office—properly relying on the 2015 Sentencing Guidelines—calculated Espinoza-Bazaldua's offense level according to § 2L1.2, the sentencing guideline for "unlawfully entering or remaining in the United States."  The 2015 version of § 2L1.2 directed courts to apply a base offense level of 8 and to add 16 if the defendant was deported after "a conviction for a felony that is . . . a drug trafficking offense for which the sentence imposed exceeded 13 months [and] the conviction receives criminal history points under Chapter Four [of the Sentencing Guidelines.]"  U.S.S.G. § 2L1.2(b)(1)(A)(i) (2015).  In its Presentence Investigation Report (PSR) to the district court, the Probation Office assigned Espinoza-Bazaldua this 16-level increase because he was deported after a felony conviction under Indiana Code § 35-48-4-10 (2005) for "[d]ealing in marijuana."  According to the PSR, Espinoza-Bazaldua was convicted of one count of dealing marijuana and sentenced to four years' imprisonment.

Espinoza-Bazaldua objected in writing to the PSR's calculation of his total offense level, arguing that because Indiana's dealing-in-marijuana statute is broader than the Guidelines' definition of "drug trafficking offense" and indivisible, the 16-level increase does not apply.  Specifically, Espinoza-Bazaldua argued that Indiana's statute was broader than the Guidelines'

---

[1] The parties completed briefing in this case in December 2016, before our court decided *United States v. Castillo-Rivera*, 853 F.3d 218 (5th Cir. 2017) (en banc).  Because *Castillo-Rivera* bears on this appeal, as discussed below, we received supplemental briefing from the parties on the requirements of *Castillo-Rivera* and how they apply here.

No. 16-41069

definition, which includes manufacturing and delivering controlled substances, because Indiana additionally criminalizes *financing* the manufacture or delivery of drugs.  He also argued that because Indiana law treats manufacturing, delivering, and financing as alternative factual means of committing the same offense, the statute is indivisible.  Finally, Espinoza-Bazaldua argued that if the district court applied the 16-level increase, his offense level would be "excessive."  He noted that under the then-forthcoming 2016 Guidelines,his applicable advisory range would be 30 to 37 months, rather than the PSR's calculation of 46 to 57 months under the 2015 Guidelines.

The Probation Office responded to the objections that whether Espinoza-Bazaldua's dealing-in-marijuana conviction was a "drug trafficking offense" was a "legal issue . . . deferred to the Court for further consideration."  The Probation Office also confirmed that Espinoza-Bazaldua correctly calculated what range would apply under the 2016 Guidelines, and that if applied, the 2016 Guidelines "would benefit" him.

At sentencing, Espinoza-Bazaldua reurged his objection that because Indiana's dealing-in-marijuana statute was broader than the Guidelines' definition of "drug trafficking offense" and indivisible, it could not be used to increase his offense level.  The district court overruled the objection, explaining: "[K]nowing[ly] or intentional[ly] provi[ding] . . . funding for either the manufacture or delivery [of drugs] would constitute aiding and abetting in the drug trafficking offense.  That is encompassed by . . . the sentencing guidelines.  So the objection is overruled."

In response to the district court's overruling the objection, Espinoza-Bazaldua's counsel said:

3

No. 16-41069

> Your Honor, given the Court's ruling, I would ask the Court to, as I've stated[] in our departure request[,] to consider that the weight attached to the 16-level enhancement in this case is excessive.
>
> . . . .
>
> His prior conviction for illegal reentry [resulted in] a sentence of 24 months at that time. . . . I understand graduated punishment but I would ask the Court to consider a sentence that's graduated and not a sentence that would be such a precipitous increase from the last sentence that he received.
>
> By my calculation under the guidelines as they would take effect in November, his range would be 30 to 37 months. I would ask the Court to consider imposing a sentence in the guideline range that would come into effect in November.

The district court then explained that it was "grant[ing Espinoza-Bazaldua] a departure [to] sentence [him] within what would otherwise be the applicable guideline range come November[.]" In sentencing Espinoza-Bazaldua to a term of 37 months' imprisonment, the court noted that this was "more, obviously, than the 24 [months] that you had served previously but not quite what you're facing now."

Espinoza-Bazaldua timely appealed, arguing only that the district court erred by applying the 16-level "drug trafficking offense" enhancement for his Indiana conviction for dealing in marijuana.

## II

"We review the district court's interpretation and application of the Sentencing Guidelines de novo." *United States v. Rodriguez-Negrete*, 772 F.3d 221, 224 (5th Cir. 2014). This includes whether a prior conviction constitutes a "drug trafficking offense" under § 2L1.2. *See id.* at 224-25.

The Government argues that, in this case, we should find Espinoza-Bazaldua's argument waived under the doctrine of invited error, or at least apply plain-error review because Espinoza-Bazaldua "relinquished his objection." We find that Espinoza-Bazaldua neither invited the error he complains of nor "relinquished his objection" to that purported error.

Under the doctrine of invited error, litigants "may not complain on appeal of errors that [they] invited or provoked the district court to commit" unless they show that the error resulted in "manifest injustice." *United States v. Salazar*, 751 F.3d 326, 332 (5th Cir. 2014) (alterations and ellipsis omitted) (quoting *United States v. Wells*, 519 U.S. 482, 487-88 (1997)). For example, a litigant invites error "[b]y explicitly agreeing to" an erroneous procedural ruling. *Id.* (citing *Walker v. State*, 781 P.2d 838, 840 (Okla. Crim. App. 1989)). "We narrowly construe counsel's statements" to determine whether a litigant in fact "invited" the alleged error. *United States v. Franklin*, 838 F.3d 564, 567 n.1 (5th Cir. 2016).

The Government insists that Espinoza-Bazaldua invited any sentencing error by asking the district court to depart from the 2015 Guidelines by considering the applicable range under the 2016 Guidelines. But the Government's argument overlooks that the error Espinoza-Bazaldua complains of is the district court's purported miscalculation of his Guidelines offense level (and consequently, the applicable Guidelines range)—not the substantive reasonableness of the ultimate sentence imposed.

Criminal sentencing proceeds in two parts. "A district court must 'begin all sentencing proceedings by correctly calculating the applicable Guidelines range.'" *Beckles v. United States*, 137 S. Ct. 886, 899-900 (2017) (quoting *Gall v. United States*, 552 U.S. 38, 49-50 (2007)). The district court then "make[s] an individualized assessment" about the appropriate sentence, considering all the factors in 18 U.S.C. § 3553(a) as potential grounds for deviating from the Guidelines range. *Id.* at 894 (quoting *Gall*, 552 U.S. at 49-50). Appellate review of sentencing errors is similarly bifurcated. A court of appeals "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range[.]" *Gall*, 552 U.S. at 51. "Assuming that the district court's sentencing decision is

procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.*

Here, Espinoza-Bazaldua argues only that the district court procedurally erred at the first step, and the record is clear that he properly objected to what he perceived to be an erroneous calculation of his Guidelines range.  He not only objected to the PSR, but also reurged his objections at the sentencing hearing.  Both times, he pressed the same arguments he raises on appeal.  *See United States v. Brown*, 727 F.3d 329, 340 (5th Cir. 2013) (reviewing alleged Guidelines errors de novo because the defendants "preserved the[ir] challenges by filing objections to the PSR and renewing their objections during sentencing").  The record also shows that defense counsel asked the district court to consider a departure or variance "*given the Court's ruling*"; counsel shifted his position as advocate precisely *because* the court determined that the 16-level drug-trafficking-offense enhancement applied.

"[N]arrowly construe[d]," counsel's statements did not invite the purported error, s*ee Franklin*, 838 F.3d at 567 n.1, and Espinoza-Bazaldua did not "relinquish" his procedural objection for the same reasons.  We therefore apply our usual de-novo standard of review.

### III

Espinoza-Bazaldua argues that the district court erred by applying the 16-level drug-trafficking-offense enhancement under § 2L1.2 for his Indiana dealing-in-marijuana conviction.  The 2015 Guidelines increased an illegal reentry defendant's base offense level by 16 if the defendant was deported "after . . . a conviction for a felony that is . . . a drug trafficking offense for which the sentence imposed exceeded 13 months [and] the conviction receives criminal history points under Chapter Four [of the Sentencing Guidelines.]"    U.S.S.G.  §  2L1.2(b)(1)(A)(i)  (2015).    The 2015 Guidelines

specifically defined "drug trafficking offense" as any offense "that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2 cmt. n.1(B)(iv) (2015). Espinoza-Bazaldua does not dispute that his sentence exceeded 13 months or that his conviction warrants criminal history points under Chapter Four. The only issue is whether Indiana Code § 35-48-4-10 (2005), which outlaws "dealing in marijuana," is properly considered a "drug trafficking offense," as defined by the Guidelines.

## A

To determine whether a defendant's prior conviction is "an offense defined or enumerated in the Guidelines" that warrants an enhancement, we usually apply the "categorical" approach. *United States v. Hinkle*, 832 F.3d 569, 572 (5th Cir. 2016). The categorical approach asks whether "the *elements* of the crime of conviction sufficiently match the *elements* of [the] generic [offense], while ignoring the particular facts of the case." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (emphasis added). When the statute of conviction "sets out a single (or 'indivisible') set of elements to define a single crime," our analysis is "straightforward." *Id.* If the elements of the indivisible crime of conviction "are the same as, or narrower than, those of the generic offense," the sentencing enhancement applies. *Id.* "[I]f the crime of conviction covers any more conduct than the generic offense," the sentencing enhancement does not apply—"even if the defendant's actual conduct . . . fits within the generic offense's boundaries." *Id.*

But if the defendant's prior statute of conviction is "divisible"—meaning it "list[s] elements in the alternative, and thereby define[s] multiple crimes"— we apply the "modified categorical approach." *Id.* at 2249; *see also Hinkle*,

832 F.3d at 572-73.  Under this approach, if the statute of conviction is broader than the generic offense, we may consider a "limited class of documents" (sometimes called "*Shepard* documents"), such as "the indictment, jury instructions, or plea agreement and colloquy[,] to determine what crime, with what elements, a defendant was convicted of."  *Mathis*, 136 S. Ct. at 2249 (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005); *Taylor v. United States*, 495 U.S. 575, 602 (1990)).

If the statute of conviction doesn't list alternative elements, but simply "enumerates various factual *means* of committing a single element," the statute is indivisible, and we cannot use the modified categorical approach to narrow the offense.  *Id.* at 2249, 2251-52 (emphasis added); *accord Hinkle*, 832 F.3d at 574.  To determine whether a statute is "divisible" or "indivisible," we consider several sources, including the statutory text, state court decisions, and if necessary, a "peek" at the record documents.  *Mathis*, 136 S. Ct. at 2256-57.

In our court, however, once a district court determines that a defendant's statute of conviction meets the corresponding generic definition, the defendant arguing on appeal that a state statute is nongeneric cannot "rest" on statutory text, even if the text seems facially broader than the conduct covered by the generic definition.  *United States v. Castillo-Rivera*, 853 F.3d 218, 222 (5th Cir. 2017) (en banc).  The defendant "must also show 'a realistic probability . . . that the State would apply its statute to conduct that falls outside the generic definition of the crime.'"  *Id.* (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).  The defendant "must at least point to" a case in which the state applied the statute "in the special (nongeneric) manner

No. 16-41069

for which he argues."[2]    *Id.* (emphasis omitted) (quoting *Duenas-Alvarez*, 549 U.S. at 193). If the defendant fails to do so, then we will affirm the district court's application of the enhancement in that case.[3]  *See id.* at 226.

---

[2] Since the Supreme Court decided in *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562 (2017) that California's sexual-intercourse-with-a-minor statute, which defines "minor" as anyone under 18, was categorically broader than the generic offense in which a minor is younger than 16—the Government appears to have acknowledged that a defendant need not always present caselaw to show that a state criminalizes more conduct than the generic offense. In cases remanded to this court in light of *Esquivel-Quintana*, the Government has not opposed various defense motions to vacate sentences based on underlying offenses that are facially broader than the generic offense due to the state's age specifications. And panels of this court have agreed, summarily vacating defendants' sentences despite their failure to present a case showing that the state actually prosecutes a broader range of conduct than what's covered by the generic offense. *See, e.g.*, Unopposed Motion to Summarily Vacate the Judgment (July 13, 2017), and Order (July 17, 2017), *United States v. Flores* (No. 15-20613); Unopposed Motion to Summarily Vacate the Judgment (July 12, 2017), and Order (July 20, 2017), *United States v. Aguilar-Hernandez* (No. 15-41512).

[3] Espinoza-Bazaldua argues that the Supreme Court "unequivocally overruled" our court's "heightened 'realistic probability' test" in *Esquivel-Quintana*. There, the Supreme Court explained that, in applying the categorical approach, "we *presume* that the state conviction 'rested upon the least of the acts' criminalized by the statute, and then we determine whether that conduct would fall within the federal definition of the crime." *Id.* at 1568 (emphasis added) (alterations and ellipsis omitted) (quoting *Johnson v. United States*, 599 U.S. 133, 137 (2010)). The Court proceeded to hypothesize about the minimum level of conduct criminalized under California's sexual-intercourse-with-a-minor statute. *Id.* The Court did not require the defendant to point to any case in which someone was prosecuted for the hypothetical crime. And in holding that California's statute was broader than its federal counterpart, the Court explained that the petitioner, even without pointing to any California caselaw, "has 'shown something *special* about California's version of the doctrine'—that the age of consent is 18, rather than 16—*and needs no more to prevail.*" *Id.* at 1572 (second emphasis added) (alteration omitted) (quoting *Duenas-Alvarez*, 549 U.S. at 191).

But the Supreme Court followed this approach in its earlier categorical-approach cases as well. In *Taylor*, the Supreme Court noted that one of Missouri's burglary statutes was broader than generic burglary because it criminalized "breaking and entering 'any booth or tent, or any boat or vessel, or railroad car[,]'" even though the defendant didn't present any caselaw to show that Missouri actually prosecutes those who burgle these structures. 495 U.S. at 602 (quoting Mo. Rev. Stat. § 560.070 (1969)). This was also true in *Mathis*, where the Supreme Court explained that Iowa's burglary statute was facially broader than generic burglary because it "reaches a broader range of places: 'any building, structure, *[or] land, water, or air vehicle.*'" 136 S. Ct. at 2250 (quoting Iowa Code § 702.12 (2013)). In light of the Supreme Court's analyses in *Taylor* and *Mathis*, our court nonetheless decided in *Castillo-Rivera* that, even if the text seems facially broader than the conduct covered by the generic definition, defendants must present some case to show a "realistic probability" that states criminalize a broader range of conduct. We therefore cannot say that *Esquivel-*

No. 16-41069

**B**

When Espinoza-Bazaldua was charged with his underlying marijuana offense in 2005, Indiana's "dealing in marijuana" statute provided:

A person who:
(1) knowingly or intentionally:
      (A) manufactures;
      (B) finances the manufacture of;
      (C) delivers; or
      (D) finances the delivery of;
marijuana, hash oil, or hashish, pure or adulterated; or
(2) possesses, with intent to:
      (A) manufacture;
      (B) finance the manufacture of;
      (C) deliver; or
      (D) finance the delivery of;
marijuana, hash oil, or hashish, pure or adulterated;
commits dealing in marijuana, hash oil, or hashish[.]

Ind. Code § 35-48-4-10 (2005).[4]

With "alternatively phrased" statues such as Indiana's, *Mathis* instructs that our "first task" is to decide divisibility, "determin[ing] whether [the statute's] listed items are [divisible] elements [defining multiple potential crimes] or [alternative factual] means [of committing a single element of an indivisible crime]." 136 S. Ct. at 2256; *accord Hinkle,* 832 F.3d at 575 & n.36. "If they are elements, [we] review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that [offense to] the generic crime." *Mathis*, 136 S. Ct. at 2256.

---

*Quintana* unequivocally overruled this court's decision in *Castillo-Rivera.    See Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012) ("[F]or a Supreme Court decision to change our Circuit's law, it 'must be more than merely illuminating with respect to the case before [the court]' and must 'unequivocally' overrule prior precedent." (quoting *Martin v. Medtronic, Inc.*, 254 F.3d 573, 577 (5th Cir. 2001)).

[4] The current version of Indiana Code § 35-48-4-10 is substantially similar to the 2005 provision, but Indiana now criminalizes dealing in salvia, as well as marijuana, hash oil, and hashish.

"But if instead they are means . . . [we] may ask only whether the *elements* of the state crime and generic offense make the requisite match." *Id.* Because we ultimately decide, however, that Espinoza-Bazaldua has not shown that Indiana's dealing-in-marijuana statue, as a whole, is broader than the Guidelines' generic definition of "drug trafficking offense," we will not address the divisibility issue.[5]

As explained above, our court requires a defendant arguing that a state statute is broader than the generic definition to point to a case in which the state applied the statute "in the special (nongeneric) manner for which he argues." *Castillo-Rivera*, 853 F.3d at 222 (quoting *Duenas-Alvarez*, 549 U.S. at 193). The 2015 Guidelines generically defined "drug trafficking offense" as any offense "that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2 cmt. n.1(B)(iv) (2015). Here, Espinoza-Bazaldua argues that because Indiana Code § 35-48-4-10 (2005) criminalizes *financing* the manufacture or delivery of marijuana, it is broader than the generic definition[6] because, in Espinoza-Bazaldua's view, Indiana outlaws "purchasing

---

[5] The Government failed to offer any argument about divisibility, stating in a single sentence of its brief: "the *Texas burglary statute* is not divisible."

[6] In *Lopez v. Lynch*, 810 F.3d 484 (7th Cir. 2016), the Seventh Circuit addressed Indiana's "dealing-in-cocaine" statute, § 35-48-4-1, which is textually identical to the dealing-in-marijuana statute at issue here. Comparing § 35-48-4-1 to the federal Controlled Substances Act, which prohibits "manufactur[ing], distribut[ing], or dispens[ing], or possess[ing] with intent to manufacture, distribute, or dispense, a controlled substance," 21 U.S.C. § 841(a)(1), the Seventh Circuit held that Indiana's dealing-in-cocaine statute was facially broader, and thus nongeneric, because Indiana "also criminalizes *financing* the manufacture or delivery of illegal drugs." 810 F.3d at 489. *Lopez* is unhelpful to us, however, for two reasons. First, the Seventh Circuit compared one of Indiana's dealing offenses to the Controlled Substances Act, while we must compare Indiana's dealing-in-marijuana offense to the 2015 Guidelines' definition of "drug trafficking offense." The Guidelines' definition includes not only the conduct prohibited by the Controlled Substances Act (manufacturing, distributing, dispensing, or possessing with intent to do those things), but also importing,

drugs through an intermediary for personal use." *See generally Rodriguez-Negrete*, 772 F.3d at 226 ("The purchase of a drug alone . . . does not fall within the plain language of a 'drug trafficking offense' under U.S.S.G. § 2L1.2."). For his read of the statute to comprehend personal-use purchases, Espinoza-Bazaldua primarily cites *Kibler v. State*, No. 49A02-0807-CR-589, 904 N.E.2d 730 (Ind. Ct. App. 2009 (unpublished), but also relies on *Hyche v. State*, 934 N.E.2d 1176 (Ind. Ct. App. 2010), and *Vausha v. State*, 873 N.E.2d 207 (Ind. Ct. App. 2007) (unpublished), for support.[7]

None of the cases on which Espinoza-Bazaldua relies establishes the personal-use interpretation of the statute that he argues. In *Kibler*, the Indiana Court of Appeals considered a double-jeopardy challenge to the defendant's convictions for "conspiracy to commit dealing in a narcotic drug" and "dealing in a narcotic drug," a statute worded identically to Indiana's dealing-in-marijuana offense. *See* § 35-48-4-1; 904 N.E.2d at *2. The State charged the defendant with "knowingly financ[ing] the delivery of . . . heroin" because he arranged with a dealer for an intermediary (his friend) to buy ten balloons of heroin. *Id.* But even if this analysis were enough to establish that directly purchasing drugs for personal use violates Indiana's dealing statute, subsequent decisions have effectively overruled that holding. *See United*

---

exporting, or offering to sell (plus possessing with intent to import, export, or offer to sell). U.S.S.G. § 2L1.2 cmt. n.1(B)(iv). Second, the Seventh Circuit decided whether Indiana's statute was broader than the comparable generic offense based only on the text of the statute, which is in tension with our decision in *Castillo-Rivera*. Again, *Castillo-Rivera* demands that a defendant show us a case in which the state applied its statute more broadly than the generic definition, and *Lopez* does not satisfy this requirement.

[7] Contrary to the Government's suggestion, our court cannot refuse to consider unpublished state cases in conducting the categorical inquiry. As we have explained, "an unpublished state decision [still] demonstrates that a state has in fact applied a statute in a manner broader than the generic definition of the Guidelines offense." *United States v. Martinez*, 595 F. App'x 330, 334-35 (5th Cir. 2014) (unpublished) (collecting cases in which our court has looked to unpublished state decisions). "In determining the actual application of a statute, a conviction is a conviction, regardless of the manner in which it is reported." *Id.* at 335 (quoting *Nicanor-Romero v. Mukasey*, 523 F.3d 992, 1005 (9th Cir. 2008)).

*States v. Bernel-Aveja*, 844 F.3d 206, 210 (5th Cir. 2016) (applying post-conviction authoritative decision to determine breadth of state criminal offense in categorical analysis).

Indeed, the same court of appeals held in *Hyche* that "mere[] . . . purchase[s]" are not enough to sustain a dealing conviction in Indiana. 934 N.E.2d at 1177 (emphasis omitted). In *Hyche*, the defendant arranged to buy three ecstasy pills for thirty dollars, but at the meeting place, either the defendant or his associate shot the dealer and killed the dealer's associate. *Id.* The defendant was convicted of felony murder, which required the jury to find him guilty on the underlying felony of drug dealing. *Id.* at 1178. The defendant challenged the sufficiency of the evidence on appeal, and the State argued that "by agreeing to pay $30.00 for" ecstasy, the defendant "*financed* the delivery of the drugs." *Id.* at 1179. In holding that the facts were insufficient to support the defendant's conviction, the Indiana Court of Appeals explained:

> Hyche was charged with *dealing* in ecstasy, not investing funds to further the offense of *possession* of it. He was not charged with possession with intent to deliver, and the record is devoid of evidence of any other persons to whom he intended to deliver the drugs. . . . Instead, he acted merely as a purchaser and not as a creditor or an investor. . . . Because the record is devoid of any evidence that Hyche was acting in any capacity other than that of purchaser, it is insufficient to support a dealing conviction and therefore a felony murder conviction based thereon.

*Id.* at 1179-80.

Similarly, in *Vausha*, the defendant challenged her conviction for financing the delivery of methamphetamine. 873 N.E.2d at *1. The facts revealed that the defendant and her husband repeatedly solicited their neighbor, a confidential informant for the State, to buy meth. *Id.* at *1-2. The court highlighted two particular facts that supported the defendant's conviction for dealing by financing the delivery of meth. First, when the informant—purporting to buy meth on behalf of downstream dealers—asked

to pay a lower price, the defendant "took control of the situation," insisting on a certain price and telling the confidential informant that his buyers must be unaccustomed to such high-quality meth. *Id.* at \*2, 5.  Second, the defendant emphasized to the informant the "significant costs and risks" she took on to manufacture the meth. *Id.* at \*5.  She specifically explained that she had to spend all day buying hundreds of over-the-counter pills to make enough meth to sell to the informant. *Id.* at \*2, 5.  Like the court in *Kibler*, the court in *Vausha* never held that Indiana's dealing statute encompasses purchases for personal use, as Espinoza-Bazaldua argues it does.

Because Espinoza-Bazaldua has not pointed us to a case establishing that Indiana applies its dealing-in-marijuana statute "in the special (nongeneric) manner for which he argues," he has not shown a "realistic probability" that the statute criminalizes a broader range of conduct than the 2015 Guidelines' generic definition.[8] *See Castillo-Rivera*, 853 F.3d at 222.  We do not hold that Indiana's statute, as a matter of law, categorically matches the 2015 Guidelines' definition of "drug trafficking offense"; we simply hold that Espinoza-Bazaldua has not shown that it does not.  We therefore AFFIRM the judgment of the district court.

---

[8] We do not decide—but nonetheless doubt—the Government's alternative argument that any conduct covered by a substantive state statute that *could* constitute aiding and abetting deserves an enhancement even though the comparable generic substantive offense does not cover the same conduct.  The plain language of the Guidelines' commentary instructs courts to determine first whether the substantive offenses align.  If they do, then aiding and abetting, conspiring to commit, or attempting to commit the state's substantive offense, which matches the generic offense, warrants the sentencing enhancement. *See* U.S.S.G. § 2L1.2 cmt. n.5 (2015); *United States v. Henao-Melo*, 591 F.3d 798, 804 (5th Cir. 2009) ("[A] § 843(b) violation [facilitating a drug offense] is, therefore, a drug trafficking offense [under § 2L1.2(b)(1)(A)(i)] only if the *underlying offense* was a drug trafficking offense." (emphasis added)); *United States v. Cornelio-Pena*, 435 F.3d 1279, 1284 (10th Cir. 2006) ("[B]ased on the Commission's articulation, offenses similar to aiding and abetting, conspiring, and attempting to commit offenses that *otherwise meet the definition* of 'crime of violence' are included in § 2L1.2(b)(1)(A)(ii)." (emphasis added)).