# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41476

United States Court of Appeals
Fifth Circuit

**FILED**
May 22, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

CARLOS ALBERTO FUENTES-CANALES, also known as Carlos Alberto Fuentes,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:15-CR-497-1

Before OWEN, SOUTHWICK, and WILLETT, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:*

Carlos Alberto Fuentes-Canales pleaded guilty to re-entering the United States illegally, an offense under 18 U.S.C. § 1326. Fuentes-Canales had previously been convicted by a Texas state court for burglary of a habitation,[1] and the federal district court applied a 16-level sentencing enhancement under § 2L1.2(b)(1)(A)(ii) of the federal Sentencing Guidelines[2] because of the Texas

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] TEX. PENAL CODE ANN. § 30.02(a) and (d) (West 2008).

[2] U.S. SENTENCING GUIDELINES MANUAL § 2L1.2(b)(1)(A)(ii) (U.S. SENTENCING COMM'N 2014).

No. 15-41476

conviction, without objection from Fuentes-Canales.  The federal district court sentenced Fuentes-Canales to 50 months of imprisonment and three years of supervised release.  On appeal, Fuentes-Canales contends that his Texas conviction was not for generic burglary[3] and that the district court therefore plainly erred in applying a 16-level enhancement.  This court issued *United States v. Herrold*[4] while Fuentes-Canales's appeal was pending, and it is now plain in light of that decision that his prior Texas offense does not qualify as "burglary" for purposes of § 2L1.2(b)(1)(A)(ii)'s 16-level enhancement.  However, we affirm the district court's judgment because, in applying the fourth prong of plain error review, we decline to exercise our discretion to correct the error.[5]

## I

Carlos Alberto Fuentes-Canales is a citizen of El Salvador and first illegally entered the United States in 1989, when he was 16 years old.  He remained in this country for 26 years, and while here, married, had a daughter, and obtained a divorce.  His Texas conviction under § 30.02(a) and (d) arose from his unlawful entry into the home of his former wife and his aggravated assault, or attempted aggravated assault, of her.  After Fuentes-Canales had served his five-year term of imprisonment for that offense, he was deported.  Approximately two months later, he was found in the United States and pleaded guilty to re-entering illegally.

---

[3] *See Taylor v. United States*, 495 U.S. 575, 598 (1990) ("We believe that Congress meant by 'burglary' [in the Armed Career Criminal Act] the generic sense in which the term is now used in the criminal codes of most States."); *id.* ("Although the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.").

[4] 883 F.3d 517 (5th Cir. 2018) (en banc).

[5] *See generally Puckett v. United States*, 556 U.S. 129, 142-43 (2009).

No. 15-41476

The Presentence Investigative Report (PSR) recommended the application of a 16-level "crime of violence" increase to Fuentes-Canales's base offense level of 8, pursuant to § 2L1.2(b)(1)(A)(ii) of the 2014 United States Sentencing Guidelines, concluding that his prior Texas burglary conviction was "burglary of a dwelling" within the meaning of comment 1(B)(iii). In addition, Fuentes-Canales has a prior conviction for driving while intoxicated. After applying a three-level reduction for acceptance of responsibility,[6] the total offense level was 21. His criminal history category was III, which resulted in an advisory guidelines range of 46 to 57 months of imprisonment.

Fuentes-Canales did not object to the 16-level enhancement, and the district court accepted the PSR's recommendations. The district court sentenced Fuentes-Canales to 50 months of imprisonment and three years of supervised release. On appeal, he contends that the district court's plain error in applying a 16-level enhancement requires that his sentence be vacated and that he be re-sentenced.

## II

Fuentes-Canales's appeal has been pending in our court for a lengthy period of time. The initial round of briefing was completed in May 2016, but another case, presenting similar issues, was also pending at that time, and on October 3, 2016, a decision in that case, *United States v. Uribe*, issued.[7] It examined whether Texas Penal Code § 30.02(a) was divisible in light of the Supreme Court's decision in *Mathis v. United States*.[8] The *Uribe* decision concluded that the Texas statute was "elements-based" and therefore that it was "divisible and the modified categorical approach applies to determine

---

[6] *See* U.S. SENTENCING GUIDELINES MANUAL § 3E1.1(a) and (b) (U.S. SENTENCING COMM'N 2014).

[7] 838 F.3d 667 (5th Cir. 2016).

[8] 136 S. Ct. 2243 (2016).

which of the provisions of § 30.02(a) was the basis of [a defendant's] conviction."[9] The *Uribe* opinion concluded that the district court did not err in applying a 16-level enhancement under § 2L1.2(b)(1)(A)(ii) of the Guidelines.[10] Because *Uribe* potentially resolved Fuentes-Canales's case, our court administratively held this appeal until the mandate issued in *Uribe*. The mandate in *Uribe* issued February 7, 2017.

On April 11, 2017, a panel of this court issued an unpublished opinion in *United States v. Herrold*, which, dutifully applying *Uribe*, held that § 30.02(a) was indivisible, and that a conviction under that statute was generic "burglary" within the meaning of the Armed Career Criminal Act (ACCA).[11] Rehearing en banc was granted in *Herrold*, and Fuentes-Canales's appeal was once again administratively held by our court, this time pending the court's en banc decision in *Herrold*.

The en banc court in *Herrold* considered how Texas state courts have construed and applied Texas Penal Code § 30.02(a)(1) and (a)(3), and this court concluded that § 30.02(a)(1) and (3) of the statute are indivisible within the meaning of *Mathis* because they "are not distinct offenses, but are rather separate means of committing one burglary offense."[12] The en banc court further held that § 30.02(a)(3) "is broader than generic burglary."[13] Accordingly, § 30.02(a) was overinclusive because it included a means of committing an offense that did not have the requisite elements of generic

---

[9] *Uribe*, 838 F.3d at 671.

[10] *Id.* at 669.

[11] 685 F. App'x 302, 303 (5th Cir. 2017) (per curiam) (unpublished).

[12] *United States v. Herrold*, 883 F.3d 517, 529 (5th Cir. 2018) (en banc).

[13] *Id.* at 536-37; *id.* at 531 (holding that generic burglary requires "intent to commit a crime contemporaneously accompany[ing] a defendant's unauthorized entry" and that Texas Penal Code § 30.02(a)(3) contains no such requirement).

burglary.[14] The *Uribe* decision was expressly overruled to the extent that it is inconsistent with *Herrold*.[15]

Fuentes-Canales's appeal was recently assigned to this panel, and we have expedited our consideration of the issues he raises.

### III

Because Fuentes-Canales failed to object to the 16-level enhancement in the district court, our review is for plain error under Federal Rule of Criminal Procedure 52(b).[16] "[T]he authority created by Rule 52 is circumscribed."[17] "There must be an 'error' that is 'plain' and that 'affect[s] substantial rights.'"[18] The Supreme Court has admonished that "Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"[19] This latter limitation is often described as the fourth prong of plain error review.[20] "Meeting all four prongs [of plain error review] is difficult, 'as it should be.'"[21]

The first and second prongs of plain error review are satisfied because the district court clearly erred in applying the 16-level enhancement. When

---

[14] *See, e.g.*, *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016); *Shepard v. United States*, 544 U.S. 13, 30 (2005) (O'CONNOR, J., dissenting) ("Every statute punishes a certain set of criminalized actions; the problem with some burglary statutes, for purposes of the ACCA, is that they are overinclusive.").

[15] *Herrold*, 883 F.3d at 529.

[16] FED. R. CRIM. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

[17] *United States v. Olano*, 507 U.S. 725, 732 (1993).

[18] *Id.* (alteration in original).

[19] *Id.* (alteration in original) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936))).

[20] *See, e.g.*, *Puckett v. United States*, 556 U.S. 129, 142 (2009) ("Puckett contends that the fourth prong of plain-error review likewise has no application because every breach of a plea agreement will constitute a miscarriage of justice. That is not so.").

[21] *Id.* at 135 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n. 9 (2004)).

No. 15-41476

Fuentes-Canales was sentenced, the Sentencing Guidelines provided for a 16-level increase in a defendant's base offense level if he or she previously was removed after being convicted of a crime of violence.[22]  A crime of violence, as defined in the commentary to the 2014 Guidelines, included the enumerated offense of "burglary of a dwelling."[23]  To determine whether the Texas offense of burglary of a habitation is equivalent to "burglary of a dwelling," courts apply the categorical approach to compare the offense as defined by the Texas statute with the "generic" definition of burglary of a dwelling.[24]  If the statute does not require that at least each of the elements of generic burglary must be found by the fact-finder or admitted by the defendant, then the state offense is not generic and therefore is not an enumerated crime of violence.[25]

We have applied the generic definition of burglary under the ACCA to the Sentencing Guidelines' enumerated burglary offenses.[26]  The principles governing the categorical approach, and the methods announced in *Mathis* for determining whether a statute is divisible, also apply when ascertaining whether a prior conviction was for "burglary" within the meaning of the Sentencing Guidelines.[27]  As used in the Guidelines' definition of "crime of violence," "burglary of a dwelling" is a subset of "generic" burglary.[28]

As discussed above, this court held in *United States v. Herrold*, that Texas Penal Code § 30.02(a)(3) sets forth a means of committing an offense

---

[22] U.S. SENTENCING GUIDELINES MANUAL § 2L1.2(b)(1)(A)(ii) (U.S. SENTENCING COMM'N 2014).

[23] *Id.* cmt. n.1(B)(iii).

[24] *United States v. Morales-Mota*, 704 F.3d 410, 412 (5th Cir. 2012) (per curiam).

[25] *See United States v. Hinkle*, 832 F.3d 569, 574-75 (5th Cir. 2016).

[26] *See, e.g.*, *United States v. Ortega-Gonzaga*, 490 F.3d 393, 394-95 (5th Cir. 2007); *see also United States v. Bernel-Aveja*, 844 F.3d 206, 212-14 (5th Cir. 2016) (relying upon an ACCA case in its analysis of whether the defendant's "burglary of a habitation" conviction qualified for an enhancement under former § 2L1.2).

[27] *See Hinkle*, 832 F.3d at 574-75.

[28] *United States v. Murillo-Lopez*, 444 F.3d 337, 344-45 (5th Cir. 2006).

6

that is not generic burglary under the ACCA, and §§ 30.02(a)(1) and (a)(3) are not divisible.[29]  Therefore, a conviction under § 30.02(a)(1) or (a)(3) is not for generic burglary within the meaning of the Guidelines.[30]  Though Fuentes-Canales was convicted under subsection (d) of § 30.02, subsection (d)(2) is essentially, though not precisely, a combination of subsections (a)(1) and (a)(3) from an elements standpoint.  Subsection (d) applies when the premises unlawfully entered are a habitation, and, by virtue of (d)(2), when "any party to the offense entered the habitation with intent to commit a felony other than felony theft or committed or attempted to commit a felony other than felony theft."[31]  Therefore, a conviction may be obtained under § 30.02(d) when a defendant entered a habitation without the effective consent of the owner and "committed or attempted to commit a felony other than felony theft."[32]  Like subsection 30.02(a)(3), the defendant need not have the intent to commit a felony at the time of unlawful entry.[33]  The offense set forth in § 30.02(d) is not generic burglary.

The district court's error in applying a 16-level enhancement for the conviction under § 30.02(a) and (d) is clear because "the 'plainness' of the error should be judged by the law at the time of appeal."[34]  This court's decision in *Herrold* is now the law of this Circuit.

The third prong of plain-error review is satisfied because the error affects Fuentes-Canales's substantial rights.  Fuentes-Canales argues that absent the 16-level enhancement, he would be subject, at most, to an 8-level enhancement, resulting in a Guidelines range of 18 to 24 months of imprisonment.  The

---

[29] 883 F.3d 517, 536-37 (5th Cir. 2018) (en banc).

[30] *Id.*

[31] TEX. PENAL CODE ANN. § 30.02(d)(2) (West 2008).

[32] *Id.*

[33] *See United States v. Herrold*, 883 F.3d 517, 526-29, 536-37 (5th Cir. 2018).

[34] *United States v. Escalante-Reyes*, 689 F.3d 415, 423 (5th Cir. 2012) (en banc).

Supreme Court has explained that "[w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error."[35]  The Court also explained that "[w]here . . . the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights."[36]

The district court stated on the record at the sentencing hearing that, after considering a number of factors, it was imposing a 50-months' sentence, in the middle of the 46 to 57 months' range it had determined was the correct Guidelines range.  The district court expressly rejected the Government's request for a sentence at the high end of the range, as well as Fuentes-Canales's request for a 36-months' sentence.  The district court explained that it had considered a lesser sentence since this was the defendant's "first conviction for illegal re-entry," but that "I think the factors that weigh against that [are] the recency of the return following a deportation, the recency of the criminal history and the seriousness of the criminal history."  The court also explained that "I think a high range would have been and could have been justified," and "the only reason I'm not doing high end is because it's your first conviction for" illegal re-entry.  The record is silent as to the sentence the district court would have imposed if the advisory sentencing range were 18 to 24 months of imprisonment.

Whether we may, or should, exercise our discretion to vacate Fuentes-Canales's sentence turns on whether the error "seriously affect[s] the fairness,

---

[35] *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016).
[36] *Id*. at 1347.

integrity, or public reputation of judicial proceedings."[37]   We begin with the recognition that in considering defendants' prior offenses, the Sentencing Guidelines seek to achieve more uniformity in sentencing.   Ideally, each defendant who committed a "crime of violence" within the meaning of a Guidelines section would receive the same level of enhancement.   Since the states define offenses such as "burglary" in varying ways, the Guidelines are construed to mean that each enumerated offense describes the "generic" offense.[38]   Once the elements of the "generic" offense are identified,[39] the categorical approach determines whether the statute of conviction requires a finding at least as to each element of the "generic" offense.[40]   However, when a state statute, such as Texas Penal Code 30.02(a)(1) and (a)(3), defines a non-generic offense, then even if, as a factual matter, the defendant actually committed the generic offense of burglary, his or her offense level under the sentencing Guidelines will not be enhanced.[41]   While courts cannot consider the factual means by which a defendant committed a prior offense for purposes of arriving upon the correct Guidelines sentencing range,[42] the defendant's

---

[37] *Puckett v. United States*, 556 U.S. 129, 135 (2009) (alteration in original) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

[38] *See United States v. Hinkle*, 832 F.3d 569, 574-75 (5th Cir. 2016).

[39] *See, e.g., Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1571 (2017) (surveying state criminal codes to determine the generic meaning of sexual abuse of a minor); *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 190 (2007) (examining the states' criminal laws in concluding that the generic definition of theft includes certain categories of aiders and abettors as well as principals).

[40] *See, e.g., Mathis v. United States*, 136 S. Ct. 2243, 2248-49 (2016).

[41] *Id.* at 2248 ("A crime counts as 'burglary' under the [ACCA] if its elements are the same as, or narrower than, those of the generic offense.  But if the crime of conviction covers any more conduct than the generic offense, then it is not an ACCA 'burglary'—even if the defendant's actual conduct (i.e., the facts of the crime) fits within the generic offense's boundaries.").

[42] *See, e.g., Hinkle*, 832 F.3d at 572 ("In determining whether a prior conviction is included within an offense defined or enumerated in the Guidelines, we have generally looked only to the elements of the prior offense, not to the actual conduct of the defendant in committing the offense.").

actual conduct in committing that crime or other evidence regarding the defendant—if sufficiently supported by the record—may be considered when determining whether a sentence above, or below, the range indicated by the advisory Guidelines would be appropriate.[43]  By analogy, an appellate court conducting plain error review may consider the defendant's actual conduct in determining whether sentencing error affects the fairness, integrity, or public reputation of judicial proceedings.

The Supreme Court explained in *Puckett v. United States* that "[t]he fourth prong is meant to be applied on a case-specific and fact-intensive basis. We have emphasized that a 'per se approach to plain-error review is flawed.'"[44] In *Puckett*, the defendant contended that the Government had violated a plea agreement and argued that the fourth prong was always satisfied in such a case.[45]  The Court reasoned, "[i]t is true enough that when the Government reneges on a plea deal, the integrity of the system may be called into question, but there may well be countervailing factors in particular cases."[46]  The Court found that "Puckett is again a good example: Given that he obviously did not cease his life of crime, receipt of a sentencing reduction for acceptance of responsibility would have been so ludicrous as itself to compromise the public reputation of judicial proceedings."[47]  The present case is analogous.

---

[43] *See, e.g., Gall v. United States*, 552 U.S. 38, 58 (2007) (concluding, in upholding a sentence of probation when the Guidelines sentencing range was 30 to 37 months of imprisonment,  that "[g]iven the dramatic contrast between Gall's behavior before he joined the conspiracy and his conduct after withdrawing, it was not unreasonable for the District Judge to view Gall's immaturity at the time of the offense as a mitigating factor, and his later behavior as a sign that he had matured and would not engage in such impetuous and ill-considered conduct in the future.  Indeed, his consideration of that factor finds support in our cases.").

[44] 556 U.S. 129, 142 (2009) (quoting *United States v. Young*, 470 U.S. 1, 17 n.14 (2009)).

[45] *Id.*

[46] *Id.* at 142-43.

[47] *Id.* at 143.

No. 15-41476

Fuentes-Canales's receipt of a sentence that would be imposed in the mine run of cases on a defendant previously convicted of generic burglary does not call the integrity of the *judicial system* into question given the specific facts of Fuentes-Canales's prior offense. There is compelling evidence, unchallenged and unrebutted by Fuentes-Canales that, as a factual matter, he did commit the generic crime of burglary and used a deadly weapon in the process. This evidence is found in a description of the facts underlying the Texas burglary offense in the Presentence Investigation Report (PSR), which relied on the state-court indictment and an "Affidavit for Arrest Warrant or Capias," ("Affidavit"). The indictment and Affidavit are attached to the PSR. Fuentes-Canales did not object to the PSR or contest the accuracy of its factual description of his conduct before and during the offense for which he was convicted under Texas Penal Code § 30.02(a) and (d). "If information is presented to the sentencing judge with which the defendant would take issue, the defendant bears the burden of demonstrating that the information cannot be relied upon because it is materially untrue, inaccurate, or reliable."[48] On appeal, the Government supplemented the record with the written charge and instructions given to the state-court jury and the jury's written responses to special issues on which the prior Texas conviction for burglary of a habitation was based.

The PSR and the state-court Affidavit reflect that Fuentes-Canales called his former wife, threatened to kill her during that call, and an hour later, at approximately 10:25 p.m., he entered her home without her permission and with no right to be on the premises. When she heard noises at the back, sliding-

---

[48] *United States v. Landerman*, 167 F.3d 895, 898 n.2 (5th Cir. 1999) (quoting *United States v. Angulo*, 927 F.2d 202, 205 (5th Cir. 1991)); *see generally United States v. Nava*, 624 F.3d 226, 231-32 (5th Cir. 2010); *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007); *United States v. Rose*, 449 F.3d 627, 633 (5th Cir. 2006).

11

glass door, she thought it was her son attempting to enter her home.  She exited her bedroom and instead encountered Fuentes-Canales in the hallway holding three of her kitchen knives.  He pressed the knives against her abdomen and threatened to kill her.  When he realized their seven-year-old daughter Keire was witnessing the assault of her mother, he grabbed Keire and exited the residence with her in his arms.  His former wife yelled that she was calling the police.  Fuentes-Canales re-entered the home, grabbed the phone, "smashed it on the floor," and fled, leaving Keire in the front yard.  His former wife called 911 on another phone.  Upon entering the home, the responding officer observed three knives on an end table in the living room and a "smashed" phone on the hallway floor of the residence.

Fuentes-Canales was apprehended, indicted, and convicted by a jury in Texas state court under Texas Penal Code § 30.02(a) and (d).  In response to a special issue, the jury unanimously found that Fuentes-Canales was guilty "of burglary of a habitation with intent to commit a felony, as charged in the indictment."  The allegations in the indictment are set forth in the margin.[49]

---

[49] The indictment alleged:

FUENTES, CARLOS ALBERTO, Defendant,

On or about the 18th day of August A.D., 2008 in the County of Dallas and said State, did

unlawfully, intentionally and knowingly enter a habitation without the effective consent of SANDRA FUENTES, the owner thereof, with the intent to commit a felony other than theft, namely, AGGRAVATED ASSAULT,

And further, said Defendant did unlawfully, intentionally and knowingly enter a habitation without the effective consent of SANDRA FUENTES, the owner thereof, and did then and there commit and attempt to commit a felony other than theft, namely, AGGRAVATED ASSAULT,

And it is further presented in and to said Court that a deadly weapon, to-wit: A KNIFE, was used or exhibited during the commission of the aforesaid offense or during immediate flight following the commission of the aforesaid offense,

No. 15-41476

The jury found in another special issue that Fuentes-Canales used or exhibited a deadly weapon during the commission of the offense.[50] In his briefing in our court, Fuentes-Canales states that this finding "relates only to whether the state judge could order community supervision," and "does not relate to any element of the offense itself."[51] However, the jury's finding increased the statutory minimum sentencing range, and Texas law required that a unanimous jury make the requisite finding. A federal court may certainly consider these findings as part of the record of the prior conviction.

The jury declined to impose a life sentence, but in another special issue, the jurors were given the option to sentence Fuentes-Canales to not more than 99 or less than 5 years of imprisonment. The jury chose 5 years.

Fuentes-Canales was deported after he had completed his state prison term. But he re-entered the United States illegally two months later while on parole for his Texas offense.

In light of the record in this case, it is difficult to conclude that the public reputation of judicial proceedings is compromised because Fuentes-Canales's

---

and that the defendant used or exhibited said deadly weapon or was a party to the aforesaid offense and knew that a deadly weapon would be used or exhibited.

[50] The special issue read, "We, the jury, unanimously find the defendant **did** use or exhibit a deadly weapon during the commission of the offense." (Emphasis in original).

[51] At the time Fuentes-Canales committed the Texas offense, TEX. CODE CRIM. PROC. ANN. art. 42.12 § 3g(a)(2) (West Supp. 2013), which was repealed effective January 1, 2017, provided that the discretion given to a judge to place a defendant on community supervision did not apply

to a defendant when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited. On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court. On an affirmative finding that the deadly weapon was a firearm, the court shall enter that finding in its judgment.

sentencing range was derived from an erroneously imposed 16-level enhancement, when other defendants, convicted of far less culpable conduct, properly receive such an enhancement under the Guidelines.  Nor can we say that the error in applying a 16-level enhancement seriously affects the fairness or integrity of judicial proceedings in light of the facts of this case.  Under the charge and special issues, the state-court jury could have found that Fuentes-Canales unlawfully entered his ex-wife's home with intent to commit aggravated assault, or that he unlawfully entered her home and committed or attempted to commit an aggravated assault, or it could have found that he did all of these things.  Given the evidence, it is more probable than not that the jury at least concluded he entered the home with intent to commit a felony other than felony theft.  A preponderance of the evidence strongly indicates that Fuentes-Canales intended to commit an aggravated assault when he unlawfully entered his former wife's home.  The 50-months' sentence that he received is comparable to sentences that would be imposed on those who committed a comparable prior offense.  Vacating his sentence would essentially, as a practical matter, result in sentencing disparity rather than promote sentencing uniformity.

While Fuentes-Canales's prior Texas conviction for burglary of a habitation does not give rise to the 16-level enhancement under § 2L1.2(b)(1)(A)(ii), his actual conduct in committing that offense, shown by a preponderance of the evidence, would be a reasonable basis for a substantial variance from the Guidelines that mirrored a sentence that included a 16-level enhancement.  For example, in *United States v. Herrera-Garduno*, the sentencing Guidelines range was 21 to 27 months of imprisonment, but the district court sentenced the defendant to 60 months of imprisonment, reasoning that though his prior drug conviction did not qualify as a drug

No. 15-41476

trafficking offense under the Guidelines, the advisory sentencing range did not reflect the seriousness of the prior convictions.[52]  We affirmed, noting that we have "upheld an upward departure without regard to whether the prior offense 'technically' qualified as a crime of violence under § 2L1.2(b)(1)(A)(ii)."[53]  It would also be reasonable to conclude that though Fuentes-Canales's conviction could not support the 16-level enhancement, his criminal history was substantially understated in light of the facts underlying his particular criminal conduct.

We therefore conclude that we should not exercise our discretion to correct the district court's error in applying a 16-level enhancement based on the Texas conviction under Texas Penal Code § 30.02(a) and (d).

*     *     *

The judgment of the district court is AFFIRMED.

---

[52] 519 F.3d 526, 530-31 (5th Cir. 2008).

[53] *Id.* at 531; *see also United States v. Pillault*, 783 F.3d 282, 286, 292 (5th Cir. 2015) (affirming a sentence of 72 months' though the top of the advisory Guidelines range was 24 months'); *United States v. Williams*, 517 F.3d 801, 806, 813 (5th Cir. 2008) (affirming a 172 months' sentence though the Guidelines range was 78-97 months').

No. 15-41476

LESLIE H. SOUTHWICK, Circuit Judge, dissenting.

With respect, I dissent. The majority has accurately detailed the factors for plain-error review, then applied those factors to let a sentence stand though it was imposed after a substantial miscalculation of the Guidelines range. It is my sense that we should be reviewers of sentences, never their effective creators. The district judge committed plain error that affected this defendant's substantial rights. I would let that judge decide what sentence is now appropriate.

It is evident that the district court started with the erroneous Guidelines range of 46 to 57 months, then imposed a sentence of 50 months taken from the middle of the range. It certainly seems likely the errant range significantly impacted the sentence given.

Without the enhancement, which was plainly erroneous, the Guidelines range would have been 18 to 24 months. The majority agreed the error affected the defendant's substantial rights but decided that leaving the sentence unchanged would not affect the fairness, integrity, or public reputation of the judicial proceedings because a substantial departure from the Guidelines was warranted on these facts.

The majority's articulation of the discretionary fourth factor of plain-error review is well-stated. How to exercise our discretion is a matter of judgment. I believe that when we use that fourth plain-error factor to refuse to vacate a sentence that is based on a substantially erroneous Guidelines calculation, and do so because it is the sentence that in our view the facts justify, we are intruding into what we should always leave as district court business: what is the proper sentence for this defendant's offenses?

Yes, the majority relies in part on the Supreme Court's use of the fourth plain-error factor to leave in place a sentence that grew out of the

16

Government's violation of a plea agreement. *See Puckett v. United States*, 556 U.S. 129, 142–43 (2009).   I do not see that example as especially useful here. The Supreme Court dealt with a special case in this category.  At times, the Court stated, when the Government fails to honor a plea agreement, there may not even be "prejudice, either because he obtained the benefits contemplated by the deal anyway (*e.g.*, the sentence that the prosecutor promised to request) or because he likely would not have obtained those benefits in any event (as is seemingly the case here)." *Id.* at 141–42.  Puckett's sentencing finally occurred three years after the time of the plea agreement in which the Government had agreed to recommend a three-level reduction for acceptance of responsibility. In those three years, Puckett had engaged in additional criminal conduct.  *Id.* at 132.   That led to the Court's statement that it seemed unlikely that the district court would even have accepted a suggestion that Puckett showed the slightest sense of responsibility.

Quite differently, what we have here is the bread and butter of the sentencing errors we address on appeal — the Guidelines range was miscalculated.  The record indicates the sentencing judge started his analysis of the proper sentence from the erroneously calculated range, gave a sentence that was tied to that range, and gave no hint that the same sentence would have been given regardless of the proper range.

In my judgment, we should not be analyzing the facts of a case and deciding that the sentence given was a justified one.  To the contrary, it is a common practice for us to vacate and remand for resentencing when plain error prejudicing a defendant is shown, without trying to decide whether the defendant got what we think he deserved.  What has weighed on us in doing so is that, as here, the sentence given is substantially outside the properly calculated Guidelines range.  *United States v. Mudekunye*, 646 F.3d 281, 291

(5th Cir. 2011). We have chosen to vacate and remand when a defendant received a sentence 19 months longer than the maximum of the correct Guidelines range. *Id.* at 290. We vacated and remanded when a defendant's 51-month sentence was 18 months longer than the upper end of the correct Guidelines range. *United States v. Hill*, 716 F. App'x 327, 330 (5th Cir. 2018). We have even remanded for resentencing where the defendant received a 24-month sentence when the correct Guidelines range was 15–21 months. *United States v. Segura-Sanchez*, 452 F. App'x 471, 474 (5th Cir. 2011).

It has not been common practice — I have not surveyed the cases to say it never occurs — for us to look at the facts of a defendant's crimes and decide whether the sentence already given is a fair one. I would remain focused on whether the record convinces us, or does not do so, that the sentence given is the one the district court would give again were we to return sentencing to that court. This defendant was tried by a specific judge in a specific court. There are variations in sentences caused by the human factor, despite the goal of the Guidelines to foster uniformity. It seems unwise, though I hesitate to us the label "unfair," for us to create a new variable by inserting our own judgments.

Our caselaw allows the fourth factor of plain-error review to be applied in this way. I do not challenge the majority's understanding of the law, only its exercise of discretion to allow the sentence to remain in place here. On sentencing issues, it is the district judge's judgment that we review. I do not want to substitute ours even when we can. I would vacate and remand.